**13 So.2d 259**

**PIERCE et al. v. HUNTER et al.**

No. 36399.

March 8, 1943.

Rehearing Denied April 12, 1943.

Oliver P. Carriere and C. Ellis Henican, both of New Orleans, for appellants.

Howell & Deramee, of Thibodaux, and Milling, Godchaux, Saal & Milling, of New Orleans, for appellees.

Thomas J. D'Albora, of New Orleans, amicus curiae.

ROGERS, Justice.

This is a suit to determine the ownership of a tract of land lying in the center of an oil field at Golden Meadow. Plaintiffs are Willie Pierce, claiming to be the owner of an undivided three-fourths interest in the land, and Felicien Duet, Jr., claiming to own an undivided one-fourth interest therein. The defendants are William H. Hunter and Edmond L. Deramee. The suit was brought primarily to try title under the provisions of Act No. 38 of 1908, and, alternatively, as a petitory action.

Alleging their possession, defendants set up a title alleged to be superior to the title of plaintiffs. In the alternative, defendants pleaded the prescription of ten years' acquirendi causa based on a title translative of property.

After a hearing on the issues set up in the pleadings, the court below held that defendants were in possession of the property and dismissed the suit so far as it is based on Act No. 38 of 1908. The court found on plaintiffs' alternative demand and prayer that plaintiffs possessed the record title to the property, but that defendants' prescriptive title was established by the evidence. Accordingly, the court maintained defendants' plea of ten years' prescription acquirendi causa and recognized defendants "to

be the true and lawful owners and possessors of the property described in plaintiffs' petition and claimed by them." From this judgment plaintiffs appealed.

The land in dispute is situated in Section 12, Township 19 South, Range 22 East, in the Parish of Lafourche. Plaintiffs trace their record title to the conveyance made by Sheldon Guthrie to Ines Pierce on July 1, 1907. Defendants trace their prescriptive title to the same source. The property sold by Sheldon Guthrie to Ines Pierce on July 1, 1907, consisted of seven acres, more or less, front on Bayou Lafourche, by a depth of seven acres, more or less. The sale also included all the rights and privileges that Guthrie had or may have to any land in the rear as far back and to the West Range Line. On July 8, 1907, or just seven days after his acquisition of the property, Ines Pierce sold to Willie Pierce the lower one-half of the seven-acre frontage by a depth of seven acres. Ines Pierce retained such title to the land lying in the rear of the property sold to Willie Pierce as he had acquired from Sheldon Guthrie. On July 10, 1911, by two acts of sale, Ines Pierce sold the remaining one-half of his land, having a frontage of three and one-half acres more or less on Bayou Lafourche, to Willie Pierce and Igniasse Pierce. Willie Pierce acquired the lower half of the property, having a frontage of one and three-quarters acres, more or less, and Igniasse Pierce acquired the upper half of the property, having a frontage of one and three-quarters acres. In each of these sales, Ines Pierce transferred to Willie Pierce and Igniasse Pierce one-half of "a certain tract of land measuring three and one-half acres (3½), more or less, front on Bayou Lafourche, by seven (7) acres in depth." In each of the deeds it was further set forth: "This sale includes all the rights and privileges that the vendor has or may have in or to the rear of the land herein sold and described, as far back to the West Range Line in the rear of said property. The above described property being part of the same property which the said Ines Pierce acquired from Sheldon Guthrie on July 1, 1907."

The effect of these sales was to transfer to Willie Pierce and Igniasse Pierce a tract of land having a frontage of three and one-half (3½) acres on Bayou Lafourche by the entire depth extending between the side lines to the West Range Line. From which it appears that the tract of land now claimed by plaintiffs is the tract of land lying in the rear of the lower half of the tract measuring three and one-half (3½) acres more or less front on Bayou Lafourche by seven (7) acres in depth, acquired by Willie Pierce from Ines Pierce on July 10, 1911.

After acquiring the above lands, Willie Pierce made four sales on January 27, 1916, copies of the deeds of which appear in the record.

One of these sales was to Andre Martin of a tract of land measuring one and one-half (1½) arpents front on Bayou Lafourche by a depth of seven (7) arpents, more or less. In the case of Pierce v. Lefort, 197 La. 1, 200 So. 801, this Court, affirming the judgment of the district court,

held that Martin was limited to a depth of seven (7) acres from Bayou Lafourche, and that the tract of land conveyed to him did not include any part of the property which is the subject of the present suit. The tract of land to which plaintiffs claim to have the record title lies immediately in the rear of the property that Willie Pierce sold to Andre Martin.

The other sales were made by Willie Pierce to Daize Cheramie, Ernest Pitre, and Ozema Cheramie. The tracts of land sold to Daize Cheramie and Ernest Pitre measured each one-half (1/2) arpent front on Bayou Lafourche by a depth of seven arpents. The tract of land sold to Ozema Cheramie was described as follows:

"A certain tract of land situated in the Parish of Lafourche on the right descending bank of Bayou Lafourche at about fifty-five miles below the Town of Thibodaux, measuring three (3) arpents front, or less, by the depth thereto belonging, bounded above by lands now belonging to Ernest Pitre, formerly by vendor, and bounded below by lands owned by Mr. and Mrs. Oscar Authement, together with all the improvements thereon.

"The above described property being the remainder of a larger tract measuring five and one-half arpents front on Bayou Lafourche, having been the property owned by the above named vendor."

On November 18, 1922, Ozema Cheramie sold to Robert Verret a certain tract of land on the right descending side of Bayou Lafourche at about fifty-two (52) miles from the Town of Thibodaux, measuring as follows: First, eighty-five (85) feet front facing Bayou Lafourche by a depth of 356 feet, more or less, and thereafter, second, three (3) arpents, more or less, front by the depth to the seven-arpent line, and third, the rear tract beginning at the seven-arpent line and measuring seven arpents front.

On August 9, 1924, Robert Verret sold to William H. Hunter the following described property:

1. "A certain tract of land situated in the Parish of Lafourche, State of Louisiana, at about 52 miles from the City of Thibodaux, on the right hand descending Bayou Lafourche, measuring a front of eighty-five feet on said Bayou by a depth of three hundred twenty-four feet, more or less, bounded above by property of Harve Cheramie and other land of Ozemee Cheramie formerly, below, by other property of Ozemee Cheramie, now or formerly, in front by Bayou Lafourche, and in the rear by portion of the property secondly described, together with all the buildings and improvements thereon and thereto belonging.

2. "Another certain tract of land, situated in the Parish of Lafourche, State of Louisiana, at about 52 miles from the Town of Thibodaux, on the right hand descending Bayou Lafourche, measuring a front of three arpents, beginning at a distance of three hundred twenty-four feet from said Bayou Lafourche by a full depth thereto belonging, bounded above by property of Ernest Pitre, now or formerly, and below by the property of Dunbar, Dukate Company, now or formerly, in the front by the property firstly described and other prop-

erty of Ozemee Cheramie, et als, and in the rear by the property thirdly described; together with all the buildings and improvements thereon and thereto belonging.

3. "Another certain tract of land, situated in the Parish of Lafourche, State of Louisiana, at about 52 miles from the City of Thibodaux, on the right hand descending bank of Bayou Lafourche, measuring about seven acres, more or less, front, beginning at a distance of seven arpents, more or less on the right descending bank of Bayou Lafourche, by the full depth thereto belonging; together with all buildings and improvements thereon or thereto belonging. It being the intention of the vendor herein to sell and transfer any and all lands that he owns in the rear of the property above described and in the rear of the original tracts of land purchased by Ines Pierce from Sheldon Guthrie on July 1st, 1907, by Act before ————, Notary Public, and duly recorded in C.B. 41, folio 157, which was afterwards sold to Willie Pierce, by the said Ines Pierce, as will hereafter be shown, less, however, several small tracts and lots sold to divers persons.

"It being the intention of the vendor herein to sell and transfer all such rights, titles and interests as he has or might have acquired from Ozemee Cheramie, et als, without in any manner guaranteeing or warranting the title to the property herein conveyed."

The annexed sketch, which is a reproduction of Exhibit P-2 forming a part of the record, is drawn to scale and shows the relative positions and measurements of the lands involved in this suit. The lands appearing on the sketch colored in green [1] represent the property described in paragraphs one and two of the deed from Verret to Hunter. The tract of land referred to as lying to the rear of the seven-arpent line, including the section colored in red,[1] represents the tract of land referred to in paragraph three of the deed. The section colored in red [1] represents the tract of land the ownership of which is in dispute.

Since neither in oral argument nor in brief have plaintiffs discussed the right of action asserted under Act No. 38 of 1908, which was dismissed by the court below, we do not find it necessary to consider that phase of their demand. The case, as presented to this Court by counsel representing all the parties, involves the correctness of the judgment which was rendered by the court below on plaintiffs' alternative demand and the defendants' plea of ten years' prescription acquirendi causa.

 Defendants concede that plaintiffs have the record title to the property in dispute, but defendants contend that their prescriptive title is superior to plaintiffs' record title. Defendants carry the burden of establishing their prescriptive title.

The elements required to establish a title by ten years' acquisitive prescription are, under the provisions of Article 3474 et seq., of the Civil Code, good faith on the part of the purchaser, a just title which is legal and sufficient to transfer the property, and an undisturbed possession for a period of ten years. In this case, the decision

---

[1] See legend at bottom of sketch.

must be predicated on the deed from Robert Verret to William H. Hunter, dated August 9, 1924, the good faith of Hunter, and the act or acts of possession, if any, exercised by him. However, before considering defendants' good faith and alleged possession for the required time, it is necessary to determine whether defendants acquired the property in dispute by a title translative of property. An examination of the deed from Verret to Hunter discloses that the tracts of land first and secondly described have a depth of only seven arpents. Therefore if the deed includes the property in dispute, it must be embraced within the description thirdly set forth therein.

Defendants argue that the title conveyed by Verret to Hunter of the land in dispute is a quitclaim deed which, containing no defects on its face, may form the basis of the short-term acquisitive prescription.

■ It is now well settled that a non-warranty deed, or a quitclaim deed, is sufficient to support the prescription of ten years' acquirendi causa, if the deed contains the essential requirements. Land Development Co. v. Schulz, 169 La. 1, 124 So. 125; Perkins v. Wisner, 171 La. 898, 132 So. 493, and Dupuy v. Joly, 197 La. 19, 200 So. 806.

Plaintiffs do not question the correctness of the proposition that a quitclaim deed may serve as a basis for a plea of acquisitive prescription. Plaintiffs' contentions, as we understand them, are, first, that so far as the thirdly described property is concerned, the language used in the deed was intended by the contracting parties to show a sale of specific property and not a mere

quitclaim of rights and interests in property; secondly, that by the deed from Verret to Hunter, defendants did not acquire a just title which, under a reasonable interpretation of the language used, can be regarded as legal and sufficient to transfer the property.

■ Conceding that the instrument relied on by defendants as the basis of their prescriptive title is a quitclaim deed, they are in no better or no worse position than if the instrument was clothed with all the formalities of an ordinary conventional deed. The primary question to be determined is not whether the instrument is or is not a quitclaim deed, but whether it is, on its face, a deed translative of property, and if so, whether it embraces the property in dispute. Thus, in Bendernagel v. Foret, 145 La. 115, at page 119, 81 So. 869, at page 870, this Court, said:

"We do not consider it sufficient, to support a plea of prescription of 10 years, that the description in the deed relied upon might be construed to include the land in question. It is necessary, to sustain the plea, that the deed relied upon is prima facie—not merely that the purchaser believed it to be—translative of the property in question. As to the title, of course, it is sufficient, to sustain the prescription of 10 years that the purchaser, in good faith, believed that his vendor owned the property; but, as to the deed being upon its face translative of the supposed title the description must include the property in question. See Albert Hanson Lumber Co. v. Angelloz, 118 La. 861, 43 So. 529, where the defendants based their plea of prescription of 10

years upon a deed containing an error in the section number, which had been corrected, and as to which it was said: 'Until the correction was made, defendants had no title to the land in dispute, and therefore have not possessed for 10 years by virtue of a title.' "

Other and later cases maintaining the legal principle that one who does not hold under a title that transfers property can not acquire title to the property by the ten-year prescriptive period provided by the articles of the Civil Code are Harang v. Gheens Realty Co., 155 La. 68, 98 So. 760; Bayard v. Baldwin Lumber Co., 157 La. 994, 103 So. 290; Baldwin v. Arkansas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442; and McCluskey v. Meraux & Nunez, 188 So. 669, decided by the Orleans Court of Appeal, in which a writ of review was denied by this Court.

The defendants do not claim that the description in the deed so far as it refers to the tract of land in dispute is, in itself, an adequate description. They claim that when read in connection with, and with reference to, other recorded deeds, the description is sufficient to enable any competent surveyor to locate and identify the property. Defendants' contention is based on the doctrine announced in Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648; Harrill v. Pitts, 194 La. 123, 193 So. 562, and other cases, that it is sufficient to uphold a plea of ten years' acquisitive prescription if the land can be identified by reference to other documents. Defendants offered, and the trial judge admitted, over plaintiffs' objection, extrinsic evidence for the purpose of showing that the tract of land thirdly described in the deed from Verret to Hunter could be located so as to include the property in dispute.

Plaintiffs contend that the deed itself shows that the property in dispute, which is colored in red on the annexed sketch, was expressly excluded and therefore can not be included in the transfer by Verret to Hunter; hence, extraneous evidence is not admissible for the alleged purpose of explaining that which is already clearly stated. Plaintiffs further contend that, conceding for the sake of argument, extrinsic evidence is admissible, the evidence produced on the trial of the case does not support defendants' contention that the land thirdly described in the deed from Verret to Hunter includes the property involved in this litigation.

The tract of land in dispute is a portion of the tract of land enumerated as the third and rear tract described in the deed from Verret to Hunter. For the convenience of the discussion, we summarize the pertinent part of the description of the third and rear tract of land as set forth in the deed from Verret to Hunter, as follows: Another tract of land situated in the Parish of Lafourche, measuring about seven acres, more or less, front, beginning at a distance of seven arpents, more or less, on the right descending bank of Bayou Lafourche, by the full depth thereto belonging. It being the intention of the vendor to sell and transfer *any and all lands that he owns in the rear of the property above described* (the two parcels of ground lying in front of the property in

dispute) and in the rear of the original tract of land purchased by Ines Pierce from Sheldon Guthrie on July 1, 1907, which was afterward sold to Willie Pierce by Ines Pierce, less, however, several small tracts and lots sold to divers persons. It being the intention of the vendor to sell and transfer all such rights, titles and interests he has or may have acquired from Ozemee Cheramie et al., without in any manner guaranteeing or warranting the title.

All the clauses of the description must be read and considered together in order to ascertain its meaning. When this is done, it becomes apparent that when the contracting parties used the language we have italicized, viz, "any and all lands that he (the vendor) owns in the rear of the property described," it was the intention of the vendor to convey, and of the vendee to acquire, *only* such lands as the vendor *owned* behind the seven-acre depth assigned to the two parcels of ground number one and two in the deed from Verret to Hunter, which are colored in green on the annexed sketch. The description as thus set forth expressly limits the extent of the property conveyed to whatever Verret, the vendor, owned of the lands lying in the rear of the property secondly described in the deed to Hunter. The limitation necessarily excludes the transfer of any lands that Verret did not own. The further identification of the lands as lying in the rear of the original tract purchased by Ines Pierce from Sheldon Guthrie does not alter the fact that the property which the parties intended should be included in the lands thirdly described in the deed were only the lands actually owned by Verret lying in the rear of the property secondly described in the deed to Hunter.

By referring to the deed dated January 27, 1916, wherein Willie Pierce transferred certain property to Ozema Cheramie, the deed dated September 13, 1921, as corrected by the deed of November 18, 1922, wherein Ozema Cheramie transferred certain property to Robert Verret, and the deed dated August 9, 1924, wherein Robert Verret transferred certain property to William H. Hunter, the lands, if any, which Verret actually owned lying behind the property secondly described in the deed to Hunter may be ascertained.

In each of the transfers by Pierce to Cheramie and by Cheramie to Verret, the depth of the property transferred was limited to "the depth thereto belonging" and "the depth thereto" respectively. The depth of the property acquired by Willie Pierce from Ines Pierce and Igniasse Pierce was limited to seven acres.

The property involved in this litigation is marsh land and is surrounded by many miles of land similar in character. Except for the recent oil development, it is wholly unfit for human habitation. Prior and for some time subsequent to the execution of the deed from Verret to Hunter, there was no available map, plan or chart of the extent and limits of any lands at Golden Meadow or its vicinity. It was not until the latter part of the year 1937 and the beginning of the year 1938 that a map or plan of the area was made by J. A. Lovell, Civil Engineer, at the instance of defendants'

mineral lessee. The annexed sketch was made from this map.

Although the residents of the neighborhood undoubtedly had a rough idea as to the location of the seven-arpent or seven-acre line, it is clear that no one knew exactly where the line was located; hence, it is entirely possible that Verret and Hunter thought there might be some property actually owned by Verret lying beyond what they then considered to be the seven-arpent or seven-acre line which caused them to execute the conveyance in the form in which it appears. The fact remains, however, that Ozema Cheramie, the vendor of Verret, did not acquire any property beyond the seven-arpent or seven-acre line, and, similarly, Verret's original acquisition from Cheramie on September 13, 1921, was subject to the same limitation.

By the so-called act of correction executed on November 18, 1922, Ozema Cheramie purported to transfer to Robert Verret, in addition to the two parcels of ground covered in the original deed of September 13, 1921, a tract consisting of any and all lands that he owned in the rear of the two parcels of ground and in the rear of the original tract purchased by Ines Pierce from Sheldon Guthrie on July 1, 1907. The property additionally transferred by Cheramie to Verret in the so-called deed of correction bears the same description as the property thirdly described in the deed from Verret to Hunter.

Since Ozema Cheramie did not acquire any property lying behind the seven-acre depth, obviously he owned no property behind that depth which he could transfer or quitclaim to Verret. So far as any property lying behind the seven-acre depth was concerned, Verret acquired nothing by the so-called deed of correction executed by Cheramie, and similarly, when Verret declared in the deed to Hunter that he only intended to transfer the property he owned behind the seven-acre depth, the transfer conveyed nothing to Hunter, since Verret did not own any property in the area referred to. Bendernagel v. Foret, Harang v. Gheens Realty Co., Bayard v. Baldwin Lumber Co., Baldwin v. Arkansas-Louisiana Pipe Line Co., and McCluskey v. Meraux & Nunez, referred to supra. See, also, Albert Hanson Lumber Co. v. Angelloz, 118 La. 861, 43 So. 529, where this Court held, as shown by paragraph one of the syllabus:

"A sale made on the condition that it shall be found that the vendor was owner of the property cannot serve as a basis for prescription, if it is found that the vendor was not owner. The accomplishment of the condition retroacts to the date of the sale, placing matters in the same situation in which they would have been if the sale had not been made; and hence any possession by the vendee is one without a title."

Since a title translative of property, the first requisite of the ten years' acquisitive prescription, is lacking, defendants' plea invoking that prescription can not be maintained. Therefore, the question of defendants' good faith and alleged acts of possession need not be considered.

For the reasons assigned, the judgment appealed from is annulled, and it is now ordered that there be judgment in favor of

plaintiffs, Willie Pierce and Felicien Duet, Jr., and against the defendants, William H. Hunter and Edmond Deramee, recognizing plaintiffs as the true and lawful owners, in the proportion of an undivided three-fourths interest in Willie Pierce and an undivided one-fourth interest in Felicien Duet, Jr., of the following described property, to-wit:

A certain tract of land, situated in Lot or Section 12, Township 19 South, Range 22 East, in the Parish of Lafourche, Louisiana, on the right descending bank of Bayou Lafourche about sixty miles below the Town of Thibodaux; measuring one and three quarter acres front, more or less, along Bayou Lafourche, by seven acres in depth; together with all of the land in the rear of said property as far back as the West Range Line in the rear of said property; bounded above by land formerly belonging to Igniasse Pierce, (now owned by E. F. Falgout Holding Company, Inc.); on the South by property of the estate of Ines Pierce; on the East by the property of Andre Martin, now deceased, Martin Lane and Giles Lee; less (a) that part of said property which was sold by the said Willie Pierce to Andre Martin by act before Clifton C. Lathrop, Notary Public for the Parish of Lafourche, Louisiana, dated January 27th, 1916, and registered in Lafourche Parish in Conveyance Book 47, folio 58; and (b) that part of said property, if any, which the said Willie Pierce sold to Daize Cheramie by Act before Clifton C. Lathrop, Notary Public for the Parish of Lafourche, Louisiana, dated January 27th, 1916, and registered in Lafourche Parish in Conveyance Book 47, folio 57.

It is further ordered that, as the lawful owners thereof, plaintiffs are entitled to the possession of the above described property and that defendants forthwith deliver possession thereof to plaintiffs. All costs are to be paid by defendants.

ODOM, J., takes no part.

O'NIELL, C. J., dissents.

13 So.2d 266