93 So.2d 202

Octave BRUCE et al.

v.

Bertoul CHERAMIE et al.

No. 42347.

Dec. 10, 1956.

Rehearing Denied Feb. 25, 1957.

Caillouet & Wise, Knobloch & Knobloch, Thibodaux, for plaintiffs-appellants.

Harvey Peltier, Donald Peltier, Thibodaux, Kalford K. Miazza, New Orleans, Edmond L. Deramee, Thibodaux, Smitherman, Smitherman & Purcell (by David E. Smitherman), Phillips & Risinger (by W. M. Phillips), Shreveport, for defendants-appellees.

SIMON, Justice.

On February 17, 1951, plaintiffs, claiming to be the legal owners of certain real property located in the Parish of Lafourche and alleging that defendants, Bertoul Cheramie, Dolte Cheramie, and the heirs of the deceased spouse of Bertoul Cheramie, were possessing and claiming to be the owners thereof, instituted this petitory action seeking to be declared the legal owners and to have defendants account to them for all oil, gas or other minerals removed from the subject land.

By supplemental petition the Spartan Drilling Company, Burford Oil Company and M. H. Marr, as the owners of an oil and mineral lease from defendants of the land in controversy, were made parties defendant herein.

The plaintiffs claim the land in question as heirs of their father, the late Joseph Bruce, who had purchased a large tract of land from Louis Bouvier on July 22, 1905, measuring three arpents, more or less, front on Bayou Lafourche by depth of confirmation and being the uppermost three arpents which Louis Bouvier acquired from Sheldon Guthrie on July 1, 1903. Plaintiffs allege that their father, though alienating certain lots or portions of the property so acquired, had never divested himself of title in and to the property here in dispute.

The property in controversy is described as follows:

"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the right descending bank of Bayou

Lafourche, about 55 miles below the City of Thibodaux, having a frontage of one hundred thirty-five and 38/100 (135.38′) feet at a distance of approximately seven arpents from Bayou Lafourche and parallel thereto, extending back between parallel lines to the range line separating Range 21 East from Range 22 East, located in Section 12, Township 19 South, Range 22 East, and bounded as follows:

"On the North or above by land owned in indivision by Philocles C. Authement, and heirs of Joseph Bruce, which land is commonly referred to as Tract 'B', on the East or toward Bayou Lafourche, by land belonging to Bertoul and Dolte Cheramie, now or formerly, on the South or below by land belonging to Philocles Cheramie, which land is commonly referred to as Tract 'D', and on the West or rear by the Range Line separating Range 21 East from Range 22 East," which said tract of land is commonly referred to as Tract "C".

In their answer defendants alleged (1) the acquisition of Tract "C" (the property in dispute) by P. C. Authement from Mr. and Mrs. Oscar Authement by deed dated January 26, 1918, hereinafter for brevity referred to as the "1918 deed"; (2) the sale of Tract "C" by P. C. Authement to Bertoul Cheramie by deed dated May 3, 1924, hereinafter for brevity referred to as the "1924 deed"; and (3) actual, physical, open, notorious and continuous peaceful possession of Tract "C" by P. C. Authement until his sale to Bertoul Cheramie and by the latter and his children since their acquisition up to the date of the filing of this suit. Defendants also filed pleas of estoppel and of prescription of ten and thirty years acquirendi causa, which pleas were referred to the merits.

At the outset of the trial, plaintiffs introduced uncontroverted evidence in proof of their heirship from Joseph Bruce. They also filed in evidence their complete chain of title from the government patent to the date of Joseph Bruce's acquisition, as well as the sales by Joseph Bruce of the front portion of the original tract of land which, however, is not here in controversy. The property here in question involves only that portion of the Joseph Bruce property in the rear of the seven-arpent line, title to which, plaintiffs allege, had never been divested by Joseph Bruce.

Defendants made no attempt to show a separate and independent chain of title, having none to offer, but relied solely on their prescriptive pleas of ten and thirty years acquirendi causa.

There was judgment in favor of defendants, maintaining the plea of ten years' acquisitive prescription of the land in controversy and dismissing plaintiffs' suit at their cost. The plaintiffs appealed devolutively.

The pleas of estoppel and of prescription of thirty years have been abandoned

by defendants on this appeal, leaving the sole issue to be whether, under the deeds referred to and the possession alleged, defendants have acquired title to Tract "C" by the prescription of ten years acquirendi causa.

Defendants base their claim of title upon the 1918 deed, by which Mr. P. C. Authement acquired the following described property:

"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the right descending bank of Bayou Lafourche, State of Louisiana, at about Fifty-two (52) miles below the Town of Thibodaux, and measuring Two and Three Quarters (2¾), of an arpent front more or less, on said Bayou Lafourche, by depth of survey and Patent.

"Bounded above, the lands of Ozeme Cheramie, and below by lands of Louis Terrebonne. Together with all the buildings and improvements thereon.

"Above described property having been acquired, by the said Mr. and Mrs. Oscar Authement, from Leonce J. Pitre, as per act of sales executed before me, Notary, under date of October 28th, A.D., 1914."

Defendants also base their claim of title on the 1924 deed by which Mr. Cheramie acquired the following described property:

"1st. A certain tract of land situated in the Parish of Lafourche in the State of Louisiana on the right descending side of Bayou Lafourche at about Fifty Three Miles from the Town of Thibodeaux measuring Thirty-Eight Feet front facing Bayou Lafourche by the depth of Four Hundred and Fifty Feet from water edge bounded above by the land of Adam Cheramie and Bertude Cheramie and below by the land Vendor Lane, and in rear by the land of vendor described below.

"2sd. A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the right descending of Bayou Lafourche at about Fifty Three miles from the Town of Thibodeaux measuring One Hundred and Thirty Eight Feet front facing Bayou Lafourche by the depth thereto belonging and appertaining bounded above by the land of Dunbar Dukate & Co., and in front by the land of Bertude Cheramie more described above in 1st, and below by the land of Vendor Lane with all improvement thereon belonging and appertaining."

The property here involved is that described in Paragraph "2sd" of Cheramie's deed.

Mr. and Mrs. Oscar Authement acquired from Leonce J. Pitre by deed dated October 28, 1914, the following described property:

"A certain tract of land, situated in the parish of Lafourche, on the right descending bank of Bayou Lafourche, at about fifty-two (52) miles below the Town of

Thibodeaux, and measuring one and one half (1½) arpent front, More Or less along said Bayou Lafourche, by seven (7) arpents more or less in depth: Bounded above by lands of Mrs. Oscar Authement (purchased this day from said Leonce Pitre), and below by lands of Louis Terrebonne.

"Above property, being part of the same property acquired by said Leonce J. Pitre, at Sheriff's sale, on February 15th, 1913."

The title asserted by defendants, being a prescriptive one, is necessarily based on Article 3478 of the LSA–Civil Code, which provides that "He who acquires an immovable in good faith and by just title prescribes for it in ten years \* \* \*". And on Article 3479, which declares that "To acquire the ownership of immovables by the species of prescription \* \* \*, four conditions must concur:

"1.   Good faith on the part of the possessor.

"2.   A title which shall be legal, and sufficient to transfer the property.

"3.   Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.

"4.   And finally an object which may be acquired by prescription."

Other applicable articles of the Revised Civil Code are:

Article 3481: "Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it."

Article 3482: "It is sufficient if the possession has commenced in good faith; and if the possesion should afterwards be held in bad faith, that shall not prevent the prescription."

Article 3483: "To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title."

Article 3484: "By the term *just title,* in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but *a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property."* (The words "just title" italicized in the statute; all other italics ours.)

Article 3485: "And in this case, by the phrase *transfer the ownership of the property,* we understand not such a title, as shall have really transferred the ownership of the property, but a title which by its nature, would have been sufficient to transfer the ownership of the property, provided

it had been derived from the real owners, such as a sale, exchange, legacy or donation.

"Thus, prescription could not be acquired under a title resulting from a lease or loan, because these contracts do not transfer the ownership of the property."

Article 3487: "To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:

"1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.

"2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription."

Article 3493: "The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him whether by an universal or particular, a lucrative or an onerous title."

The record contains a photographic copy of the 1918 deed. That portion of the deed describing and delineating the property therein conveyed shows that the words "seven (7) arpents, more or less, in depth" were X'd over and stricken, and in lieu thereof the phrase "of the depth of survey and patent" was written.

Plaintiffs contend that the said description in the 1918 deed was not adequate to transfer the title to the property described, and that the correction made immediately before execution of the deed by the parties was an obvious attempt to increase the amount of property purchased. They further contend that the vendors, not being the owners of the property from the seven-arpent line to the range line, could not and did not sell and convey title to that area; that the only title which could be legally conveyed to the purchaser was the title to the property having a depth of seven arpents, more or less.

With reference to the correction contained in the 1918 deed, the purchaser, P. C. Authement, testified that when the deed was originally presented by the notary to him and to the vendors for their signatures, the description of the property to be conveyed thereby was described as having a depth of seven arpents; that, it being his understanding that the vendors owned the property to the rear of the seven-arpent line with a depth to the range line and being desirous of purchasing this entire

area, he refused to accept the property limited to a seven-arpent depth; that the notary, in the presence of the vendors, X'd out the phrase "seven arpents, more or less, in depth" and in lieu thereof interlined the words "depth of survey and patent", thus describing the property as extending from Bayou Lafourche in the front to the range line in the rear; and that with this change the parties affixed their signatures to the deed. He further testifies that he thereafter took actual and physical possession of the entire area so conveyed.

It is significantly noted that the testimony of the officiating notary corroborates in its salient points the testimony of P. C. Authement, the purchaser.

The 1918 deed recites: "Above described property having been acquired, by the said Mr. and Mrs. Oscar Authement, from Leonce Pitre, as per act of sales executed before me, Notary, under date of October 28th, A.D., 1914." It is observed that the property conveyed by the Pitre deed is described as having a depth of seven arpents, more or less. Upon this recital plaintiffs seek to impose the presumption that since the same notary executed the Pitre deed and the 1918 deed the said notary secured the description as originally shown in the 1918 deed from the Pitre deed.

For this reason plaintiffs contend that when an instrument of sale makes reference to another sale for a more perfect description as to the thing sold the two deeds must be construed together, and the purchaser is bound by such notice and must look to the reference deed to determine the extent of his acquisition. In support thereof plaintiff cites: Lawler v. Bradford, 113 La. 415, 37 So. 12; Lee v. Long, 166 La. 1084, 118 So. 320; Tennent v. Caffery, 170 La. 680, 129 So. 128; Emerson v. Cotton, 209 La. 1003, 26 So.2d 16; Saucier v. E. Sondheimer Co., 212 La. 490, 32 So.2d 900.

We do not consider the cited cases applicable to or decisive of the facts and circumstances of this case. We deem the description contained in the 1918 deed as being fully adequate, without any reference to the Pitre deed, to convey title to the property as described in said 1918 deed. The 1918 deed to P. C. Authement fully describes by metes and bounds the four boundaries of the area in question, fronting or having an east boundary on Bayou Lafourche by a depth or west boundary as called for by the survey and patent and bounded above or north by the lands of Ozeme Cheramie and below or south by the lands of Louis Terrebonne. In regard to the phrase "by depth of survey and patent", as stated in the 1918 deed, an examination of the survey and patent to the subject property unmistakably shows a depth to the range line separating South Range 21 and South Range 22.

Manifestly, this description with four given boundaries was fully adequate so as not to impose upon the purchaser, P. C. Authement, notice of any defect in the title of his vendors. The reference to the Pitre deed, in the face of such a full description, cannot be considered to have aroused the doubt of the purchaser or have placed him on guard as to any defect in title to the depth of property which he was acquiring.

The record is replete with undisputed evidence that upon his acquisition of the subject property in 1918, P. C. Authement took actual, physical, open and notorious possession of the high land extending about five and one-half arpents from Bayou Lafourche, leasing same for farming purposes, and he further exercised the same dominion of ownership over that part of the land which is exclusively marsh land which that said property was susceptible to, such as the leasing thereof to trappers and its actual use by them for trapping until said property was sold by Bertoul Cheramie by deed dated May 3, 1924. During this six-year period of the possession thus exercised by him no notice of any claims or protest by Joseph Bruce, author in title of plaintiffs, was made as to the ownership of said property.

The other deed upon which the prescriptive title asserted by the defendants is based is the 1924 deed. Plaintiffs urge the inadequacy of the description in this deed and contend that the deed shows no intention to sell a depth beyond the seven-arpent line; that in fact the deed makes no reference to the seven-arpent line or to the range line. Plaintiffs deny that the descriptive phrase "depth thereto belonging and appertaining" contained in the 1924 deed, embraces the land in controversy, i. e., the land beyond the seven-arpent line and extending to the range line. They argue that such a descriptive phrase indicates that the vendor intended to sell only the full depth of the property legally owned by him; that the said vendor, P. C. Authement, not having legally acquired the property in dispute could not and did not legally convey same to defendants in the 1924 deed. Notwithstanding this contention, P. C. Authement, who has no interest in the subject property or the outcome of this suit, testified that when he executed the 1924 deed he intended to and did convey and sell the property fronting Bayou Lafourche on the east to a depth extending westerly to the range line, with given northern and southern boundaries, and that he delivered possession thereof. Manifestly, P. C. Authement intended to sell to the depth of which he acquired, namely, by depth of survey and patent.

Thus the descriptive words "by the depth thereto belonging and appertaining", contained in the 1924 deed, unquestionably refer to the descriptive phrase "by depth of survey and patent" contained in the 1918 deed.

Much argument is offered in connection with the freehand drawing of the diagram of the property under consideration appearing in the 1924 deed, a photostatic copy of which is in the record. The said diagram is obviously not drawn according to scale. The notary, however, testified that by said drawing he was attempting merely to show the intention of the parties that the property being transferred extended in its depth to the range line, and that it was his understanding from the parties that that was the depth of the property being conveyed.

It is not disputed that immediately following his purchase by the 1924 deed, Bertoul Cheramie took physical, open and notorious possession of the entire area purchased by him. He constructed buildings on the front or high portion of the property and leased the remainder of said high land for farming purposes. He leased the remainder of the area, which was mainly marsh land, for trapping purposes. The trapping lessees exercised their lease right from 1924 until 1937 over the property extending to the range line. During 1934 and 1935 trespassers were legally repulsed. In October of 1938 the defendants leased the land fronting Bayou Lafourche and extending to the range line for oil and gas exploration. In 1940 mineral operations were conducted thereon, to the full knowledge of all the inhabitants in that area. Today, said land is oil-producing property.

It appears that during this entire time in which possession of said property was exercised by defendants, as aforestated, there were no objections, claims or protests made by Joseph Bruce, or his heirs, plaintiffs herein, following his death in 1950, as to the title or ownership of said property until this suit was filed on February 17, 1951. The first evidence adduced by plaintiffs of any possible claim of ownership of the property is that shown by a mineral lease executed by Joseph Bruce to The Texas Company on May 4, 1937. That mineral lease shows that said lessor gave at the most an indefinite description of the land leased, for therein is shown that it was the intention of the said lessor to lease for gas and oil exploration "whatever lands he owned or claimed" in Section 12, Township 19 South, Range 22 East. This governmental section contains, besides other lands, the land here in controversy. It appears that no operations were conducted under said mineral lease. There is no evidence of any annual payments made under said lease or that it ever came to the knowledge of defendants herein.

The cardinal rule in determining the adequacy of descriptions of property is pronounced in the case of Snelling v. Adair, 196 La. 624, 199 So. 782, 786, wherein we said:

" 'The law does not require that a deed, to support the prescription of 10 years,

shall contain such a description that the land can be identified without reference to other records. Article 3479 of the [LSA] Civil Code requires merely "a title which shall be legal, and sufficient to transfer the property." Article 3483 declares that, to support the prescription of 10 years, "a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title." Article 3484 declares that the term "just title" does not mean a title from the owner, but a title from any person whom the purchaser honestly believed to be the true owner, "provided the title be such as to transfer the ownership of the property." Article 3485 defines the phrase "transfer the ownership of the property" as meaning, "not such a title as shall have really transferred the ownership of the property, but a title which, by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owner." And article 3486 declares that, to support the plea of prescription of 10 years, the title must be certain; that is, it must fix exactly the origin or basis of the possession. Article 3437 declares that it is sufficient for a person wishing to take possession of an estate to enter upon and occupy a part of the land, provided it be with the intention of possessing all that is included within the boundaries. The word "boundaries," in that article, means the limits or marks of inclosures if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. * * *.' Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 650."

◼◼ Further, in Snelling v. Adair, we said:

"It is a settled rule of law in this state that if a portion of the description of property in a deed is either erroneous or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence. Thornhill v. Burthe, 29 La. Ann. 639; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Willis v. Ruddock Cypress Co., 108 La. 255, 32 So. 386; Suthon v. Laws, 127 La. 531, 53 So. 852; Suthon v. Viguerie, 127 La. 538, 53 So. 855; Bayard v. Baldwin Lumber Co., 157 La. 994, 103 So. 290; Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Harrill v. Pitts, 194 La. 123, 193 So. 562; 13 Cyc. 627; and 36 Cyc. 591. And 'a deed, which was sufficient to convey property as between parties thereto * * * would be sufficient * * * basis upon which to rest plea of prescription of 10 years.' Harrill v. Pitts, supra."

◼ In the case of Keller v. Summers, 192 La. 103, 187 So. 69, 71, we said:

" 'Bad faith is not to be imputed to a purchaser merely because an examination of the records would have disclosed a defect in the vendor's title. What is meant by deed valid in form, or prima facie translative of property, is one that has no defect apparent upon its face.' Delouche v. Rosenthal, 143 La. 581, 78 So. 970, 972. 'If no one could invoke successfully the prescription of 10 years who could have discovered by an examination of the public records before buying the property that the seller had no title, the plea would never be available, because no one could invoke it except one having a valid title and having therefore no need for the prescription.' Land Development Co. of Louisiana v. Schulz, 169 La. 1, 124 So. 125, 127. (Italics ours.)"

Plaintiffs contend that the trial judge was in error in maintaining the plea of prescription acquirendi causa of ten years, under LSA–Civil Code Article 3478, and that the defendants were not in moral or legal good faith as required by LSA–Civil Code Article 3479.

■ We find the legal or moral good faith of the defendants to be unassailable. As aforestated, the fact that reference to the Pitre deed was made in the 1918 deed is not in itself sufficient to have given notice to P. C. Authement of any possible defect in the title to the land being conveyed, for the reason that the description contained in the deed as corrected and executed was ample, sufficient and adequate to transfer title to the land contained within said description. Nor can P. C. Authement on the one hand as purchaser under the deed of 1918 or the defendants who acquired under deed of 1924 be held in legal bad faith for not having examined the public records to determine the validity of title so acquired as a condition precedent to executing the respective deeds.

■ One is not required to examine the public records to determine the validity of the title to real property he contemplates purchasing as a condition precedent to relying upon a plea of prescription or statute of repose. If the essential elements prescribed by LSA–Civil Code Articles 3478 and 3479 exist, he is fully protected by the plea of prescription of ten years. Good faith is always presumed, and bad faith is not to be imputed to a purchaser merely because of his failure to have examined the records which upon examination would have disclosed defect in his vendor's title. Keller v. Summers, supra; Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369; Richardson & Bass v. Board of Levee Commissioners, 226 La. 761, 77 So.2d 32.

There is no evidence in the record to show that P. C. Authement doubted or had reason to doubt at any time that the property being purchased by him did not belong to his vendor or that the corrections in the

description required by him contemporaneously with the execution of the 1918 deed was an attempt by him in legal bad faith to greatly increase the amount of property to be acquired by him.

The good faith of Bertoul Cheramie has been assailed on the basis of alleged acts committed by him subsequent to the date of his acquisition by the 1924 deed. The good faith at the time of his acquisition is not questioned by plaintiffs. However, we find that the acts complained of subsequent to Cheramie's acquisition are not convincing evidence of alleged bad faith.

We are further confirmed in our view as to the good faith of both Authement and Cheramie by the uncontradicted facts that both parties, respectively, paid a purchase price commensurate with the value of the property at the time of their respective purchases; that both expended considerable sums on its improvement and development; paid the annual accruing taxes levied thereon; possessed the property continuously, notoriously and openly by use to which it was susceptible, such as farming and trapping operations, from the date of their respective acquisitions, the granting of mineral leases for oil and gas explorations thereon, followed by mineral development and production; all of these acts of respective ownership being exercised without complaint or protest by the plaintiffs or their author in title until the date of the filing of this suit, as aforenoted.

■ Under the evidence adduced at the trial of this matter and under the jurisprudence as above indicated, we conclude that the 1918 deed from Mr. and Mrs. Oscar Authement to P. C. Authement was translative of title, and P. C. Authement took possession of the property immediately on his acquisition in good faith, believing that he had acquired valid title to all of the property thereby conveyed and he possessed the same from front to rear openly, i. e., from Bayou Lafourche to the range line; that in 1924 Bertoul Cheramie acquired the said property and the property in front of it by deed translative of title and immediately took possession of same in good faith, believing that he had acquired valid title to all the property thereby conveyed; that under LSA–Civil Code, Article 3493 through the tacking of the possession of P. C. Authement and Bertoul Cheramie the latter's title ripened into valid ownership ten years after the date of the purchase by P. C. Authement, or on January 26, 1928.

Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.

McCALEB, J., dissents with written reasons.

McCALEB, Justice (dissenting).

I am in agreement with the majority that the description contained in the 1918 deed "by depth of survey and patent" was sufficient to translate to P. C. Authement the property in dispute, which lies in the rear of the 7-arpent line. And, although I entertain some doubt as to the legal good faith of Authement in his purchase from his mother and father, in view of the uninitialed change in the description of the depth of the land conveyed from "Seven (7) arpents more or less in depth" to "depth of survey and patent", Authement's explanatory testimony would seem sufficient to sustain the conclusion that he had no actual notice that his parents' title did not extend beyond the 7-arpent line and, therefore, that plaintiffs have not overcome the presumption that he was a possessor in good faith.

Conversely, I cannot subscribe to the majority view that the 1924 deed from Authement to Bertoul Cheramie translated the property involved herein as I do not regard the clause "by the depth thereto Belonging and appertaining—" as describing a title beyond the 7-arpent line or to the range line. It seems to me that these words clearly indicate the intention of the vendor to convey whatever area in depth to which he had title at the time of the transfer and signify that he did not wish to warrant title to any property that he did not legally own.

For, if this were not his intention, it would have been appropriate for the act to provide the same depth "of survey and patent" that was contained in Authement's acquisition or some other accurate description of the depth of the area. To say the least, a description of the depth of property conveyed as that "thereto Belonging and appertaining" is most indefinite and it is manifest that one purchasing under such a description is unable to determine from the face of the deed the extent of his acquisition.

That an adequate description of the land conveyed is essential to establish the ten-year acquisitive prescription is well setteld by the jurisprudence. Bendernagel v. Foret, 145 La. 115, 81 So. 869; Hunter v. Forrest, 195 La. 973, 197 So. 649; Pierce v. Hunter, 202 La. 900, 13 So.2d 259 (and authorities therein discussed) and Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225, 236. In the last cited case, it was observed: " * * * plaintiffs are required to prove, in addition to good faith possession for the required time, that the deed under which they claim describes and indentifies the land with clarity and that it is prima facie translative of the property. It is not enough that the description in the deed might be construed to include the land in question."

Obviously, when the depth of property is stated to be "thereto Belonging and appertaining" the purchaser cannot ascertain the area or the location of the land he is acquiring and must look to other acts to determine the extent of his title. And, when such a vague description necessitates investigation of other acts, it involves an examination of the title. And, if an examination of title is required, one cannot become a purchaser in good faith unless he pursues every lead and ferrets out all the facts to the end that he may not purchase until he has complete information before him. Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369, quoting with approval from Dinwiddie v. Cox, La.App., 9 So.2d 68. See also Richardson & Bass v. Board of Levee Commissioners, 226 La. 671, 77 So.2d 32.

In the case at bar, a complete examination of the title would have readily shown that Authement did not own any property in depth beyond the 7-arpent line and, therefore, Mr. Cheramie could not rely on the statement contained in Authement's acquisition deed that the property had a depth in accordance with the original survey and patent.

I respectfully dissent.