329 So.2d 850 (1976)
Richard L. HANNA et al.
v.
Harris GREEN and Lois Talt Green.
No. 12862.
Court of Appeal of Louisiana, Second Circuit.
March 15, 1976.
*851 Horton & Jones by William R. Jones, Coushatta, for plaintiffs-appellants.
Wright, Dawkins, James, Hogg & Bleich by Bert C. Hogg, Ruston, for defendants-appellees.
Before BOLIN, HALL and MARVIN, JJ.
MARVIN, Judge.
The several plaintiffs (hereafter called Hanna) appeal from a judgment decreeing defendants (Harris Green, et ux) to be owners of several tracts of real property in Lincoln Parish. We affirm.
Filed in 1973, the Hanna suit was styled as an action to remove a cloud from the Hanna title, under which title Hanna *852 claimed ownership of the SW/4 of the SW/4 of Section 24, Township 20 North, Range 3 West, less excepted tracts. For simplicity, we refer to the property as the SW/4 of the SW/4. Defendants alleged their ownership of several tracts within the SW/4 of the SW/4 and pleaded the acquisitive prescription of 10 and 30 years.
In 1856, a patent issued to John Green for 240 acres of land including the subject property and adjacent lands in Sections 24 and 25.[1] In 1877, D. L. Green acquired 470 acres including the SW/4 of SW/4 from John Green.
During his lifetime, D. L. Green disposed of various tracts of land to several vendees, including W. R. Madden, Jim Brax Morrow, and the Hopewell Church. In 1931 in a foreclosure brought against the D. L. Green estate (through his widow and administratrix) R. B. Hanna (plaintiffs' ancestor) purchased the property foreclosed at a sheriff's sale.[2] R. B. Hanna and his descendants have since corporeally and civilly possessed some portions of the property described in the sheriff's deed.[3]
An understanding of the issues and claims of acquisitive prescription as concerns the several tracts disputed between Hanna and defendants may be facilitated by referring to a detailed survey in the record which was prepared by C. L. Albritton, an expert witness who testified below. A facsimile of the pertinent detail of this survey is reproduced here. Also reproduced here is the pertinent part of 1912 partition plat which is hereafter mentioned.
*853 
*854 
*855 Defendants claim or trace their titles (1) from the excepted tracts mentioned in the sheriff's deed; (2) to deeds from persons other than successors in title to D. L. Green, primarily persons who derive title from the heirs of B. F. Stokes by virtue of a partition between these heirs in 1912; and (3) on the basis of open and uninterrupted possession as owner for more than 10 years and for more than 30 years under the law and codal articles relating to acquisitive prescription.
In the 1912 partition, Ila Stokes acquired, with adjacent properties, a tract in the SW/4 of the SW/4 described as:
"5.88 acres in the shape of a `V' in the nw in the SW/4 of SW/4 [sic] . . ."
The plat filed with and referred to in the partition instrument shows that the V-shaped tract is north and west of Brushy Branch, a creek running through the area.
In 1915 Ila Stokes and her sister, Alma Stokes Avery, entered into an exchange whereby Mrs. Avery acquired the V-shaped property by the same description and by reference to the partition as recorded at a specific conveyance book and page.[4] The tract referred to as the V-shaped property is shown on the facsimile survey as Tract A, and as Tract B, bounded north and west by the forty lines and east and south by Brushy Branch. The trial court found that Alma Stokes Avery, and her later successors in title (and we note, by virtually the identical description), including the defendants, had enclosed Tract A by fences and other visible boundaries and had openly and without interruption possessed Tract A as owner, respectively, since about the year 1915 to the time of the trial. The record amply supports the lower court's findings.
Tract B of the facsimile survey is that property between what was an old eastern boundary fence of Tract A and Brushy Branch erected by W. R. Madden. Tract C is the property lying south and east of Tracts A and B and lying north and west of the state highway. In 1917, W. R. Madden acquired what the trial court found was Tract B by a deed from Alma Stokes Avery, et vir, containing this description:
A strip of land containing 5 acres, more or less, in the West Side of SW/4 of Sec. 24, T. 20 N., R. 3 West, bounded on the East by Brushy Branch and surrounded on the North, West, and South by a wire fence built by W. R. Madden to determine the boundary lines on these three sides.
In 1915, W. R. Madden acquired from D. L. Green "one-half acre" described by metes and bounds beginning at the southeast corner of the Hopewell Church lot [Tract F] and property by this description:
". . . Also all of the land East of Brusby [sic] Branch and West of the Public Road, making the Public Road the East Line and Jim Brack's Land the South Line, containing 5 acres more or less. All in SW ¼ of SW ¼ Sec. 24, Tp. 20, N. R. 3 West . . ."
It is the above property said to contain five acres that is Tract C.
Jim Brack, as revealed by the testimony and as found by the trial court, was *856 Jim Brax Morrow, who in 1904, under a deed from D. L. Green went into possession of land contiguous to the southwest corner of the SW/4 of SW/4. A son of Jim Brax Morrow testified that he was born on the property in 1907 and lived there for approximately 25 years. He testified as to the neighbors and as to a fence on the east of his father's property, the west boundary of Tract A. Among the neighbors were W. R. Madden and Cal Moore. By mesne conveyances, defendants acquired Tract A from Mrs. Avery's successors in 1964. The trial court found that fences, hedgerows or turnrows, enclosing these tracts (A, B and C), separately or with other property owned by a respective possessor, existed continuously since about the year 1915. While one owner-possessor might have removed interior fences when two or more tracts were acquired by the one owner, all of the SW/4 of the SW/4 lying north and west of the state highway had been adversely possessed within enclosures by defendants or their predecessors in title for more than 30 years. The trial court further found that D. L. Green did not possess or claim to possess any portion of the SW/4 of the SW/4 west and north of the highway after the year 1915 and that R. B. Hanna and the plaintiffs did not possess [we add corporeally] any portion of the SW/4 of the SW/4 north and west of the highway before or after the 1931 sheriff's sale. The trial court's findings are fully supported by the record.
In the SW/4 of the SW/4 east of the highway, defendants acquired by mesne conveyances the excepted ½-acre W. R. Madden tract (F) and the Hopewell School tract (E) which were excepted from the sheriff's deed. The lower court found that the requisites of the 30-year acquisitive prescription had been met by defendants and defendants ancestors in title. The record supports these conclusions. Neither plaintiffs nor defendants claim ownership or possession of the Hopewell Cemetery lot of 1.9 acres, a small triangular portion of which lies in the SW/4 of the SW/4 immediately south of the north forty line and west of the highway.
The trial court also found the deeds to Tract A to be translative of title from the 1912 partition deed through conveyances to the deed by which defendants acquired and that defendant had proved the requisites of the 10-year prescription. In view of the finding below and here that the requisites of 30-year acquisitive prescription have been fulfilled, and while it was not necessary to the decision below, we approve of the trial court's conclusions in this respect as to Tracts A, B and C in the SW/4 of SW/4, excepting the cemetery lot.[5]
*857 The character of possession exercised by defendants and their predecessors in title consisted primarily of grazing livestock, patch farming, planting grass and cutting and clearing wood. The acts of possession exercised by the several respective owners of Tracts A, B and C from about 1915 were not grossly different as between these owners. The description of each tract was in almost identical language from possessor to possessor, except for typographical errors of no consequence and except to add to some descriptions the book and page of the conveyance records by which the conveying possessor had acquired the property.
In Jowers v. Coats, cited supra, we had occasion to consider the issues emanating from a situation where record title apparently existed in two parties, both of which claimed the property. There Coats had title to 600 acres. Jowers had a title to a 20-acre tract within the 600 acres. Jowers and his predecessors had corporeally possessed the 20-acre tract for more than 30 years. Coats and his predecessors had apparently possessed civilly the 20 acres and had corporeally possessed the remainder of his title. There we recognized the "well-established principle" that possession of a portion of land under a deed is possession of the whole, but stated that the principle was not applicable against one who possessed corporeally and adverse to the possessor of part of the larger tract, citing La.C.C. Arts. 3478, 3499 and Ernest Realty Co. v. Hunter Co., Inc., 189 La. 379, 179 So. 460 (1938).
The lower court found sufficient acts of possession for more than 30 years to establish a 30-year acquisitive prescriptive title in defendants as to Tracts E and F in the SW/4 of SW/4. We agree. The Hopewell School and a home for the teacher at the school existed on these respective tracts for several years before defendants acquired the property in 1942 from the Lincoln Parish School Board. The School Board acquired the two tracts by deeds in 1919 and 1920 from the Trustees of the Hopewell School. One or more witnesses who attended school there testified that the school property was fenced on three sides not facing the road as shown on the facsimile survey. Harris Green built a fence along the road shortly after his purchase to graze cattle there and has since maintained the fences. Tract F was used during this time of the existence of the school by the teacher at the school and was later used by tenants of Harris Green.[6] The SW/4 of SW/4 east of the highway, to the east and south of Tract F and Tract E were farmed by R. B. Hanna. Tract E was farmed by Harris Green and fences, turnrows or hedgerows bounding the property were recognized by the tenants or farm laborers of both Green and Hanna. The Hopewell Church and school and teacher residence had existed in the area for several years before defendant acquired in 1942 the ½ acre described as beginning at the SE corner of the Hopewell Church lot and thereafter described by calls south, east, north and west.
In Snelling v. Adair, 196 La. 624, 199 So. 782 (1941), the Supreme Court had under consideration, as applied to a 10-year acquisitive prescription question, a description which did not describe the property by governmental subdivisions but as lying [in fact erroneously] west of a railroad, bounded by lands of T on the north, by lands of W on the south and east, and by lands of M on the west. The property was *858 east of the railroad and was not contiguous on the south and east to the lands of W. W's lands were 50 acres removed from the property there in question. The court emphasized that the record was replete with testimony of persons owning property or residing in the general area that the tract in question was owned by defendant's ancestor. The court there upheld the description as being susceptible of location and translative of title and subject to the acquisitve prescription of 10 years.
" . . . it suffices if the description be `such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary,' . . ." 199 So. 788.

As to Tract F, the ½-acre lot sold by D. L. Green to W. R. Madden in 1915, and eventually to Harris Green, was sufficiently identified to support the plea of 10 years acquisitive prescription, considering the long existence of the school and continued corporeal possession adverse to Hanna. We cannot say the lower court was manifestly erroneous in these conclusions.
In summary, Hanna has shown an unbroken chain of title from the patentee through D. L. Green and the sheriff's deed of 1931 to R. B. Hanna of a large quantity of acreage.[7] Defendants have shown that they and their predecessors in title and adversely to Hanna, corporeally possessed as owner, portions of the SW/4 of SW/4 in such a manner and for such uninterrupted periods of time as to fulfill the requirements to establish a valid title by acquisitive prescription. Defendants have further shown that while Hanna corporeally possessed property east of the public road in the SW/4 of SW/4, Hanna did not corporeally possess property therein west of the public road.
At appellants' cost, judgment below is
AFFIRMED.
NOTES
[1] The N/2 of the NW/4 and S/2 of the SW/4, Section 24, and W/2 of the NW/4, Section 25.
[2] The sheriff's deed contains this description: "NE/4 of NW/4, W/2 of SE/4 of NW/4, W/2 of E/2 of SW/4 and all that part of W/2 of NW/4 lying East of Brushy Branch and SW/4 of SW/4 Section 24 (less lot sold to Hopewell Church, described as a . . . parcel of land commencing at the SE corner of SW/4 of SW/4 Section 24, T 20, N., R. 3 West and run North 20 chains; thence West 5 chains; thence West to Brushy Branch 262/3 rods; thence East 7 rods, making triangle plat; thence West to the said corner; thence 262/3 rods to the said Brushy Branch, containing 3¾ acres; [This corresponds to Tract E on the facsimile survey reproduced with this opinion] and lot sold to W. R. Madden, described as follows: One half acre beginning at the SE corner of the Hopewell Church lot and running south 70 yards; thence East 35 yards; thence North 70 yards; thence West 35 yards to starting point [This corresponds to Tract F on the facsimile survey reproduced with this opinion]. Also all the land East of Brushy Branch and West of the public road, making the public road the East line and Jim Brack's land the South line, containing 5 acres, more or less, all in SW/4 of SW/4, Section 24, T. 20 N., R. 3 West [This corresponds to Tract C on the facsimile survey reproduced with this opinion] * * * Ten acres off of the East side of the NW/4 of NW/4; E/2 of NW/4 and W/2 of NE/4, Section 25, all in T. 20, N. R. 3 W. LESS AND EXCEPT, the following described property: * * * Six acres in NW corner of SE/4 of NW/4, * * * and 8½ acres in NW/4 of NW/4, and East of Brushy Branch, described as follows: * * * LESS AND EXCEPT the following described property: All of that part in SW/4 of NW/4 of Sec. 24, lying East of Brushy Branch, and South of Mrs. J. M. Brewster containing 25 acres, more or less. Also all of that part in W/2 of SE/4 of NW/4 Sec. 24 lying South of Mrs. J. M. Brewster and West of Mrs. J. E. Hammons, containing 15 acres, more or less. Also the NW/4 of NW/4 of SW/4 Sec. 24, all the above in T. 20 N. R. 3 W., containing in all 50 acres. (This being the same land that D. L. Green sold to J. M. Lindsey as recorded in Book TT page 408). Material in brackets supplied.
[3] Plaintiffs corporeally possessed the SW/4 of SW/4 east and south of the highway (excluding the school property and residence on the north), but did not corporeally possess property therein north and west of the state highway. Plaintiffs apparently possessed corporeally other properties described in the sheriff's deed and claimed to possess civilly all of the property described in the sheriff's deed. Possession of a part of a tract as being possession of the whole of the tract does not apply to defeat the adverse corporeal possession by defendants and their ancestors in title for a sufficient period of time to establish prescriptive title. See Jowers v. Coats, 76 So.2d 99 (La.App.2d Cir. 1954), discussed infra.
[4] A partition deed has been held translative of title or just title under La.C.C. Art. 3483. See Pitre v. Peltier, 122 So.2d 867 (La.App.1st Cir. 1960). The civil code provides that an exchange also may be translative of title. La.C.C. Art. 3485. Also the fact that property is described in a conveyance as being bounded by the estates of other persons does not fatally affect the description of the property. If the property intended to be conveyed can be ascertained with certainty by the aid of legally admissible extrinsic evidence, the description is sufficient to support a plea of 10 years acquisitive prescription and to permit tacking of possession under a plea of either 10 or 30 year acquisitive prescription. See Bruce v. Cheramie, 231 La. 881, 93 So.2d 202 (1957); Authement v. Theriot, 292 So.2d 319 (La.App.1st Cir. 1974); La.C.C. Arts. 3493, 3495.
[5] When reference is made to the plat filed with the 1912 partition instrument which describes the disputed Tract A as 5.88 acres in the shape of a "V" in the northwest corner of the SW/4 of SW/4, it is with certainty that this description intended to convey all that part of the SW/4 of SW/4 lying north and west of Brushy Branch.

Tract C, by the 1915 deed from D. L. Green to W. R. Madden, was described in part as ". . . all of the land east of Brushy Branch and West of the public road making the public road the east line and Jim Brack's land the south line . . . in the SW/4 of SW/4 . . ." This description is sufficient to uphold the deed as being translative of title.
The 1917 deed from Alma Stokes Avery to W. R. Madden is also translative of title, the description contained in which is reasonably ascertainable by reference to the 1915 deed to W. R. Madden and the exchange deed to Alma Stokes Avery, both of which are of record. This is Tract B of the disputed property. The 1917 deed describes this property as bounded on the east by Brushy Branch and on the north, south and west by lands (or fences) of W. R. Madden.
The fact that Tracts A and C, respectively, contain more acreage than the deeds specify is of no moment. A sale by fixed boundaries is a sale by aversionem even though quantities are also given. La.C.C. Art. 854; Passera v. City, 167 La. 199, 118 So. 887 (1928); Schexnayder v. Duhon, 163 So.2d 393 (La.App.3d Cir. 1964).
[6] Tract F description in the deed to the School Board in 1920 and to Harris Green in 1942 reads as follows:

". . . and ½ acre, beginning at the SE corner of the Hopewell Church lot and running South 70 yards, thence East 35 yds., thence North 70 yards, and thence West 75 yards to starting point . . ."
Tract E description in the deeds reads as follows:
"Beginning 300 ft. West of the S.E. corner of N.W. ¼ of S.W. ¼ of section 24 T. 20N. R. 3 West and running North 65 yds., thence N. 30 E. 67 yds., thence West 234 yds., thence in a Southeasterly direction to a point 72 yds. West of starting point, thence East 72 yds. to starting point . . ."
[7] See Pure Oil v. Skinner, 294 So.2d 797 (La. 1974).