the defendant in our decision in the companion cases.

Counsel do not claim that Cox did not receive a fair and impartial trial in accordance with the accepted rules and regulations fixed for the orderly trial of cases in the courts of this state, as required by our constitution and statutes, or point out in what manner he was prejudiced by the separation of the spectators in the courtroom where he was tried. Instead, it is contended that the constitutional rights of "these spectators" were violated during the process of his trial, and it is his right to assert the denial of the rights of these people thus purportedly occurring.

One need only review the record in this case to readily discern the defendant received a fair and impartial trial, being given every consideration and protection afforded all persons accused of crimes under our constitution and laws by a judge who acted throughout with great patience and forebearance in an effort to maintain a reasonable semblace of order in the courtroom during the trial, as well as to accommodate the colored spectators, even authorizing the use by them of all seats not then occupied by the white people. Finally, on the third day of the trial, he went so far as to have an officer of the court count the number of seats still vacant and then go into the corridors outside the courtroom and inform those congregated there of their availability.

Nevertheless, the trial continued with many still remaining vacant.

To hold, as contended by Cox, that his conviction is a nullity merely because of the segregated condition of the courtroom, would, of necessity, make every conviction of an accused during the past years in all of the courts of the state, and regardless of race, nullities, with the result that everyone now confined in our penal institutions would be entitled to have his conviction set aside, and these thousands of criminals would then be turned loose on the people of the state.

For the reasons assigned, the conviction and sentence are affirmed.

158 So.2d 179

**Frank S. NOEL**

v.

**JUMONVILLE PIPE AND MACHINERY COMPANY, Inc.**

No. 46608.

Nov. 12, 1963.

Rehearing Denied Dec. 20, 1963.

Blum & Sotile, Donaldsonville, Joseph A. Loret, Baton Rouge, for plaintiff-relator.

Simmons & Savoie, Ansil N. Simmons, Jr., Napoleonville, for defendant-respondent.

HAMLIN, Justice.

This matter concerns a certain irregular-shaped tract of land, containing 38.88 acres, lying both north and south of the state highway and the Texas & Pacific Railroad in Ascension Parish near the Iberville Parish line.

Jumonville Pipe and Machinery Company, Inc. (hereinafter referred to as Jumonville), instituted these proceedings in the form of a petitory action.

Frank S. Noel thereafter filed a jactitory action, alleging that he was the true and lawful owner of the land involved since 1914, more than thirty years. He stated that he had exercised possession of the property by cultivating, farming and pasturing the land, and that he had exercised dominion and control over it as owner. He complained that Jumonville had slandered his title by claiming to be the owner of the land, and by placing of record in the Conveyance Office of Ascension Parish certain oil, gas and mineral leases, and timber sales. By setting up title in itself in answer, Jumonville converted Frank S. Noel's jactitory action into a petitory action also.

Noel responded by filing a plea of thirty years acquisitive prescription.[1]

The actions were consolidated and subsequently heard in the district court. The court rendered judgment in favor of Frank S. Noel, sustaining the plea of thirty years prescription and ordering the cancellation of certain described timber sales, and oil, gas and mineral leases.

The Court of Appeal, on original hearing and on rehearing, declared Jumonville to be the true and lawful owner of the property. 148 So.2d 891.

In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, La.Const. of 1921, LSA), we directed Certiorari to the Court of Appeal, First Circuit, in order that we might review its judgment. 244 La. 138, 150 So.2d 591.

The record reflects the following transactions relating to McManor Plantation (the ancestral and present home of Frank S. Noel), which adjoins the instant property:

1.  December 22, 1914, acquisition by Frank S. Noel's father, Robert E. Noel, from Emile Legendre.

2.  January 17, 1920, sale by Robert E. Noel to Dr. Isaac Benson.

3.  December 16, 1920, sale by Dr. Isaac Benson to Robert E. Noel.

4.  December 16, 1937, judgment of possession in Succession of Robert E. Noel, in the proportions of one-third to Lillian Easton Noel, Widow of Robert E. Noel, and one-twelfth each to Juanita Noel Joffrion, Frank Noel, R. Everett Noel, Wilfred Noel, Easton Noel, Meredith Noel, Lillian Noel Wood and Eloise Noel Hall.

5.  August 20, 1945, donation of her undivided interest by Lillian Easton Noel, Widow of Robert E. Noel, to her eight children.

---

1. "1. That in addition to all of the manners in which the said Frank S. Noel has acquired title to the immovable property described in the article numbered First in the said Frank S. Noel's original petition heretofore filed herein, the said Frank S. Noel has acquired title to said immovable property by the prescription of thirty years, which prescription the said Frank S. Noel hereby expressly pleads.

"2. In the alternative and in the event that the court should hold that the said Frank S. Noel has not acquired title to said immovable property by prescription, then and in that event the said

Frank S. Noel, Mrs. Juanita Noel Joffrion, R. Everett Noel, Wilfred J. Noel, Mrs. Lillian Noel Wood, J. Meredith Noel, Mrs. Eloise Noel Hall and Easton Noel have acquired the ownership of said immovable property together and in indivision by the prescription of thirty years, which prescription the said Frank S. Noel hereby expressly pleads, and, therefore, the defendant herein, Jumonville Pipe and Machinery Company, Inc., does not own said immovable property or any part thereof and has no right, title, interest or claim in or to said immovable property."

6. August 27, 1945, sale of their interests by Mrs. Robert E. Noel, Juanita Noel Joffrion, R. Everett Noel, Wilfred Noel, Meredith Noel, Easton Noel, Eloise Noel Hall and Lillian Noel Wood to Frank S. Noel.

7. December 18, 1945, sale of a one-half interest by Frank S. Noel to J. Meredith Noel.

8. March 17, 1953, sale of his undivided one-half interest by J. Meredith Noel to Frank S. Noel.

The property which forms the subject matter of this suit and lies adjacent to McManor Plantation is not mentioned in any of the above transactions; it is unquestioned that Jumonville is the record owner.

We have carefully read the testimony of record and agree with the findings of the trial judge that there is ample evidence to show that Robert E. Noel and thereafter Frank S. Noel continuously possessed the disputed property for a period of thirty years commencing from December 16, 1920, when Dr. Isaac Benson sold to Robert E. Noel. The record actually shows that Robert E. Noel manifested acts of possession and acts of ownership immediately after his original purchase in 1914. He continued such acts after reacquiring McManor Plantation in 1920 until his death in November, 1937. Frank S. Noel continued the conduct of his father; he managed McManor Plan-

tation and possessed the disputed property from the time of his father's death until the time of trial in the district court. Acts of possession and ownership consisted of the building of fences, farming and cattle grazing, and requesting that certain neighbors refrain from hunting on the land.

We find no necessity for reiterating the testimony of the numerous witnesses who appeared on behalf of plaintiff and defendant. Later in this opinion, a determination will be made as to whether Frank S. Noel's possession satisfies the requirements of West's LSA–R.C.C. Article 3500, and whether he can tack to his possession that of his ancestors in title.

LSA–R.C.C. Article 3500 provides that the prescription of thirty years is founded on continuous and uninterrupted possession which must be public and unequivocal, and under the title of owner. The trial judge found that plaintiff herein met the requirements of said Article 3500; he concluded as follows:

"Certainly in view of the civil law doctrine of 'le mort saisit le vif,' there was 'a succession of relationship' between the possession of the late Robert E. Noel and his son Frank S. Noel, 'created * * * by operation of law' and existing in fact. As the court understands that doctrine, the heirs succeed to all of the rights of the decedent at the very moment of death, and without the passage of the slightest moment of

time. This being true, there was 'no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of such owner to reclaim the land is thereby continued.'

"Furthermore, the idea that one who sells according to his title thereby abandons his material detention of the excess beyond his title is rather theoretical. The average layman knows little or nothing of the legal description of his property; he only knows it as he sees and possesses it. On the other hand the notary who simply copies the legal description as given in the title is likely to know very little about the area which his client actually possesses. Although all of the transfers among the heirs of Robert E. Noel as set forth above were made according to the title by which he acquired, and without any specific mention of any additional area possessed beyond the title, nevertheless, in each instance, the legal description of the property is prefaced by the statement that what is being conveyed is 'A certain sugar plantation known as McManor Plantation, situated in the Parish of Ascension, State of Louisiana, on the right bank of the Mississippi River at about one league above the town of Donaldsonville. * * *' The evidence shows that the Noels have always considered the subject property as a part of McManor Plantation and have always treated it as such. There was certainly never any intention to abandon either their possession or claim of ownership with regard to the area in dispute, nor did any such abandonment occur in fact.

"In view of these considerations, and in view of the doctrine of 'le mort saisit le vif,' the court concludes that the present litigant, Frank S. Noel, is entitled to tack to his possession that of his father, Robert E. Noel. The two possessions constituting in reality one continuous possession extending for a period in excess of thirty years, and that possession meeting, in the opinion of the court, all of the requirements of Article 3500, the plea of thirty years prescription will be maintained."

The Court of Appeal, relying in great part on the case of Stutson v. McGee (241 La. 646, 130 So.2d 403), found that there was no privity of contract between Frank S. Noel and his predecessors in title; that, consequently, the possession of Frank S. Noel's authors could not be "tacked on" to his own possession for the purpose of establishing possession for the thirty year period prescribed in Article 3499 [2] of LSA—

---

2. "The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith." LSA–R.C.C. Art. 3499.

R.C.C. The Court concluded that having failed to establish possession in himself for thirty years, Frank S. Noel had not discharged the burden of proving possession sufficient to maintain his plea of prescription.[3] It stated:

"Counsel for appellees seek to escape and [the] rule of the Sibley & Stutson cases, supra, on the ground that as Frank S. Noel was the son of the late Robert E. Noel and inherited a small undivided interest in the property from the latter, privity was thus established between them. The fallacy with this contention is that Frank S. Noel sold an undivided one-half interest in the McManor plantation to J. Meredith Noel in 1945 and it is impossible to establish that the inherited undivided interest was not included therein. It is well settled that the burden of proof rests upon one relying on the affirmative plea of acquisitive prescription and from the record as made up, we do not believe that the plaintiff has borne the burden of proving the privity required by law in the mentioned transfers."

On rehearing, the Court of Appeal reinstated its original decree; it held that Frank S. Noel's attempt to invoke the provisions of Article 852 of LSA–R.C.C.[4] for the first time in his application for rehearing was prohibited by the procedural rules and requirements obtaining under our jurisprudence and laws, and stated, "It is clear beyond question that after having pitched his title on prescription predicated upon alleged 30 years adverse possession without expressly alluding to either Article 852 or 3499 LSA–R.C.C., appellee, in the court below, limited and restricted his efforts to an attempt to establish title pursuant to Article 3499. * * *"

We are primarily concerned with the principle of "Tacking On" as it applies to acquisitive prescription under LSA–R.C.C. Article 3499 and related articles, and our findings herein will be based on these articles.

In the case of Stutson v. McGee, 241 La. 646, 130 So.2d 403, the defendant George

3. Our principal reason for granting this writ was for the purpose of reviewing the doctrine of "Tacking On" with respect to thirty years acquisitive prescription.

4. "Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession." LSA–R.C.C. Art. 852. This article appears in Title V, "Of Fixing the Limits, and of Surveying of Lands."

McGee was and had been in possession of the disputed property for a few months short of thirty years. Prior to his possession, the property had been possessed by W. A. Davis and his heirs. McGee purchased adjacent property from the Davis heirs and continued the possession of the Davis heirs of the controversial land. This Court sustained plaintiff's contention that *since there was no privity of title respecting* the disputed property between defendant and his vendors, the possession of the latter could not be tacked to provide the requisite thirty years; we stated:

"Unquestionably a person may actually possess an immovable for 30 years without any title and, by that means, acquire ownership thereof. Revised Civil Code Articles 3499 and 3503. But if he has to add to his possession that of his vendor for effecting the accrual of such period he is governed by Revised Civil Code Articles 3493 and 3494 [5], contained in that part of our Civil Code which deals with the ten year acquisitive prescription, and those provisions clearly disclose that they may be availed of only if the person seeking to 'tack' possesses under some kind of title. * * *

* * *

"Since this defendant himself did not possess the disputed tract for 30 years, and inasmuch as he is not permitted to 'tack' the possession thereof held by his vendors of the adjacent lands to that which he has enjoyed, the plea of prescription was correctly overruled."

See, Sibley v. Pierson, 125 La. 478, 51 So. 502.

The instant case can be differentiated from the Stutson case; therein the Court was considering the question of privity with respect to possession and prescription as it affected a vendor-vendee relationship.

"Although it has been said that there is no definition of the word 'privity' which can be applied in all cases, as most generally defined, and in its broadest sense, 'privity' is the mutual or successive relationship to the same right of property, or such an identification in interest of one person with another as to represent the same legal right.

5. "The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular, a lucrative or an onerous title." Art. 3494, LSA–R.C.C.

"By the word *author* in the preceding article, is understood the person from whom another derives his right, whether by a universal title, as by succession, or by particular title, as by sale by donation, or any other title, onerous or gratuitous.

"Thus, in every species of prescription, the possession of the heir may be joined to that of the ancestor, and the possession of the buyer to that of the seller." Art. 3494, LSA–R.C.C. See, 8 La.L. Rev., pp. 105–109.

" 'Privity' is also defined as meaning a successive relationship to, or ownership of, the same property from a common source; a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law; a succession of relationships by deed or other act or by operation of law; and is further defined as meaning a derivative kind of interest, founded on, or growing out of, the contract of another.

* * *

"While privity implies succession, it also implies a derivation of title, and exists only because of the relationship between the parties or because of the derivative character of their title. Privity exists where successive relationship of, or ownership to, the same right of property from a common source appears, and it exists between two successive holders when the latter takes under the earlier as by grant, descent, will, or voluntary transfer of possession. Thus, in order to constitute privity between successive occupants of property, all that is necessary is that one receives his possession from the other by some act of such other, or by operation of law.

* * * "

72 C.J.S. Privity; Privies; Privy, pp. 954–956. See, Coats v. Lee, La. App., 70 So.2d 229; Sattler v. Pellichino, La.App., 71 So.2d 689; Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768, 769; Hadwin v. Sledge, La.App., 116 So.2d 114.

■ When Robert E. Noel died in 1937 (he had possessed the disputed property for seventeen years) his eight children were his legal heirs, being called to his succession by operation of law. LSA–R.C. C. Articles 940 and 941. Being seized of the succession of their father, the children were authorized to continue the possession of the disputed property as if there had been no interruption (LSA–R.C.C. Art. 942 [6]; Lee v. Harris, 209 La. 730, 25 So.2d 448); it being necessary for them to continue the possession for thirteen years before ownership could be asserted (LSA–R.C.C. Art. 943 [7]).

6. "The heir being considered seized of the succession from the moment of its being opened, the right of possession, which the deceased had, continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession." LSA–R.C.C. art. 942.

7. "The right of possession, which the deceased had, being continued in the person of his heir, it results that this possession is transmitted to the heir with all its defects, as well as all its advantages, the change in the proprietor producing no alteration in the nature of the possession.

"Thus the extent of the rights of the deceased regulates those of the heir, who succeeds to all his rights which can be transmitted, that is, to all those which are not, like usufruct, attached to the person of the deceased." LSA–R.C.C. Art. 943.

From the above law and jurisprudence, we are impelled to conclude that "privity" existed between Robert E. Noel and his children with respect to the possession of the disputed property, and they were entitled to join their possession to that of their ancestor. See, Articles 3493, 3494, LSA–R.C.C.; Chrichton v. Krouse, La. App., 142 So. 635.

Immediately after his father's death, Frank S. Noel continued the possession of the disputed property. He testified that he operated McManor Plantation and the disputed property as a unit on behalf of his mother and his brothers and sisters.

■ The evidence preponderates that the possession was in the capacity of ownership in the Noels. A. M. Edwards Co. v. Dunnington, La.App., 58 So.2d 225; Cortinas v. Peters, 224 La. 9, 68 So.2d 739; Esso Standard Oil Company v. Catsulis, La.App., 136 So.2d 431; Phillips v. West, La.App., 144 So.2d 173. No adverse possession nor hostility was ever expressed by Frank S. Noel's brothers and sisters. Sanders DeHart v. Continental Land & Fur Co., 205 La. 569, 17 So.2d 827; Lee v. Jones, 224 La. 231, 69 So.2d 26; Succession of Seals, 243 La. 1056, 150 So.2d 13; 82 A. L.R.2d 21.

Up until the sale of McManor Plantation by his co-heirs to him, on August 27, 1945, Frank S. Noel's interest in McManor Plantation and in the possession of the disputed property was at all times undivided.

"When a person, at his decease, leaves several heirs, each of them becomes an undivided proprietor of the effects of the succession, for the part or portion coming to him, which forms among the heirs a community of property, as long as it remains undivided." LSA–R.C.C. Art. 1292.

"The property sought to be seized herein may be likened unto an undivided interest in a parcel of real estate. Both are incorporeal and intangible. * * *" First Nat. Bank & Trust Co. of Vicksburg v. Drexler, La.App., 171 So. 151. See, Martel v. Rovira, 8 La. App. 385.

" * * * The words 'part of' and the word 'divided' in the phrase 'divided fractional part' have been held to indicate an intention to convey in severalty, while the word 'undivided' indicates, of course, an intention that the grantee shall hold in cotenancy with the grantor in the proportion that the acreage granted bears to the whole tract." 16 Am.Jur.Deeds Sec. 244, p. 577.

"Tenants in common hold by several and distinct titles, with unity of possession; and each tenant owns an undivided fraction, being entitled to an interest in every inch of the property.

With respect to third persons the entire tenancy constitutes a single entity." 86 C.J.S. Tenancy in Common § 4, p. 362.

"It is the settled jurisprudence of this state that a co-owner has the right to use the property held in common with others for the purposes for which it is destined such as cultivation of farm land, Stinson v. Marston, 185 La. 365, 169 So. 436; and he need not pay rent for such use. Juneau v. Laborde, 228 La. 410, 82 So.2d 693." British American Oil Producing Company v. Grizzaffi, La.App., 135 So.2d 559. Cf. Mitcham v. Mitcham, 186 La. 641, 173 ·So. 132.

A natural conclusion follows that when Mrs. Robert E. Noel and seven of her children divested themselves of their interest in McManor Plantation by sale to Frank S. Noel on August 27, 1945, those seven children gave up their undivided interest in the possession of the herein disputed property (this possession they had never asserted). Frank S. Noel remained in control of the whole possession; as stated supra, he possessed the disputed property as owner up until the time of trial in the district court.

The sale of December 18, 1945 by Frank S. Noel to his brother J. Meredith Noel was the sale of "the undivided half" of McManor Plantation, and the Act of Sale described McManor Plantation. Frank S. Noel has never divested himself of his undivided interest in McManor Plantation. There is no evidence of record to the effect that J. Meredith Noel ever exercised any right of possession on the disputed property or disturbed the possession of Frank S. Noel thereon between December 18, 1945 and March, 1953.

While the property which forms the subject matter of this suit is not specifically described in any of the transactions hereinabove recited, nevertheless, the property which was intended to be transferred and which was actually transferred and delivered is described as "A certain sugar plantation known as McManor Plantation, situated in the Parish of Ascension, State of Louisiana * * *", which in fact included the property in controversy. We note that each transfer not only conveys all the rights, ways, servitudes and privileges, but also conveys the advantages and appurtenances belonging to McManor Plantation.

We, therefore, conclude that the foregoing transfers complied with LSA–R.C.C. Article 3493 et seq., and that Frank S. Noel is entitled to tack his possession to that of his ancestors and authors in title.

In this connection, it is pertinent to observe that these views are supported by Articles 2673 and 2674, Planiol's Traité

Élémentaire de Droit Civil, Volume 1, Part 2, Page 584, reading as follows:

## "§ 4. OF THE TACKING OF POSSESSION

### "2673. Definition and Utility

"It is not necessary that the same person possess the immovable during the entire period required for prescription. The present possessor may count, besides his possession, that of his predecessors (Art. 2235).[8] This is what is called the junction of possessions. This favor was necessary on account of the many mutations that take place in ownerships. Prescription would often be impossible if a person had to possess himself throughout the entire time required by law.

"This tacking of possession takes place in two different ways, depending upon whether the present owner is a successor by universal title or by a particular title. Art. 2235 does not draw this distinction. It seems to put all successors of every kind upon the same footing. But the differentiation results from the very nature of things."

## "A. UNIVERSAL SUCCESSORS

### "2674. Continuation of the Deceased's Possession

8. "ART. 2235. Pour compléter la prescription, on peut joindre à sa possession celle de son auteur, de quelque manière qu'on lui ait succédé, soit à titre uni-

"The universal successor merely continues the deceased's possession (no. 2661). He succeeds to all of the latter's obligations as well as rights. It is thus not a new possession that begins but it is the deceased's possession that is transmitted to his heirs, with its virtues and its faults. Therefore if the deceased was a precarious possessor, his successor is necessarily a holder under the same title. He cannot prescribe as long as his precarious title has not been changed (no. 2320). If the deceased being in good faith, had a right to prescribe in from ten to twenty years, his heir may complete the prescriptive period within this delay, although he personally was in bad faith. On the contrary, if the deceased, being in bad faith, could not prescribe except by thirty years, his heir will be in the same position even if he personally is in good faith."

See, LSA–R.C.C. 3493 and 3494 herein quoted in Footnote 5.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is reversed and set aside; the judgment of the trial court is affirmed and reinstated, said judgment reading as follows, to-wit:

versel ou particulier, soit à titre lucratif ou onéreux. * * *" Fuzier-Herman's Code Civil Annoté, Volume 7, Page 948.

"IT IS ORDERED, ADJUDGED AND DECREED that the plea of thirty years' prescription acquirendi causa filed by Frank S. Noel be and the same is hereby sustained and that, accordingly, Frank S. Noel be and he is hereby decreed the owner of the following described property, to wit:

"A certain tract of land situated in Section 6, Township 11 South, Range 14 East, West of the Mississippi River, Ascension Parish, Louisiana, containing 38.88 acres, and more particularly described as beginning at a point marked 'A', said point 'A' being the intersectional point of Sections 6, 84, 85 and 7, and running North 76° West, 2100 feet to point 'B'; thence running North 13° East, 1122 feet to point marked 'C'; thence running in a general Northwesterly direction a distance of 1054 feet to point marked 'D'; thence running South 50° 30' East, a distance of 600 feet to point marked 'E'; thence running in a general Southeasterly direction a distance of 1100 feet to point marked 'F'; thence running in a general Southwesterly direction a distance of 944 feet to point marked 'G'; thence running in a general Northeasterly direction a distance of 2650 feet to point of beginning, all as is more fully shown with reference to a map of survey by J. C. Waties, C. E., dated July, 1957.

"LESS AND EXCEPT: That portion of the above described property reserved and excluded from the sale from Miles Timber Company to Frank H. Jumonville dated October 24, 1941, and recorded in COB 79, Folio 14 of Ascension Parish; which area is marked in red on a map prepared by Frank H. Waddill, C. E., dated February 16, 1940, and attached to said act of sale.

"The right is reserved to Frank S. Noel to institute proper proceedings against Miles Timber Company or its vendee with regard to said tract.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Clerk of Court of the Parish of Ascension cancel and erase from his records the following documents insofar as they purport to affect the hereinabove described property belonging to Frank S. Noel, and no further:

"1. Timber sale, Jumonville Pipe and Machinery Co., Inc., to E. E. Fowler et al, dated February 1, 1954, and recorded in COB 99, folio 348.

"2. Timber sale, Jumonville Pipe and Machinery Co., Inc., to Higgins, Inc., dated October 29, 1948, and recorded in COB 89, folio 66.

"3. Oil, gas and mineral lease, Jumonville Pipe and Machinery Co., Inc., to Fred E. Simmons, dated November 27, 1956, and recorded in 67GG, folio 534.

"4. Oil, gas and mineral lease, Jumonville Pipe and Machinery Co., Inc., to Francis A. Gallery, dated April 15, 1954, and recorded in 67Y, folio 266.

"5. Oil, gas and mineral lease, Jumonville Pipe and Machinery Co., Inc., to Union Producing Company, dated June 10, 1947, and recorded in 67L, folio 220."

All costs to be paid by Jumonville Pipe and Machinery Company, Inc.

McCALEB, Justice (dissenting).

Assuming, without necessarily conceding,[1] that plaintiff has the right to tack to his own possession his father's adverse possession of the 38 acres in contest, I fail to perceive how, under the facts stated in

the majority opinion, plaintiff has acquired more than an undivided $\frac{1}{12}$th interest in the land by the 30-year acquisitive prescription.

According to the facts, plaintiff's father possessed adversely from 1920 until his death in 1937, or for 17 years. Plaintiff succeeded to his father's possession in 1937, but only to the extent of an undivided $\frac{1}{12}$th interest as a coowner with his mother and brothers and sisters. This character of possession continued until 1945, during which year plaintiff acquired, by donation from his mother and by purchase from his brothers and sisters, their outstanding interests in McManor Plantation. But this acquisition by donation and purchase did not transfer to plaintiff the right of adverse possession of his mother and brothers and sisters to the 38 acres in dispute. This is because the instruments of transfer did not contain a description of the 38 acres and, therefore, under the well-settled jurisprudence, the adverse possession of the donor and vendors cannot be tacked to plaintiff's

---

1. A literal reading of Articles 3493 and 3494, which are found under the heading "Of the Prescription of Ten Years" in our Civil Code, indicates that it is essential for the claimant of acquisitive prescription to have a *title*, in order for him to tack the possession of his author. The majority relies upon a quotation from Planiol (Vol. 1, Part 2, No. 2673 and 2674, p. 584) to support the ruling that no sort of title is necessary, but it is to be noted that this material is contained in a section entitled "Special Rules that Apply to Prescription of Ten to Twenty Years". Although Planiol enumerates an "acquisitive prescription" of thirty years under French law (Vol. 1, Part 2, No. 2651, p. 574) an examination shows that the basis for such statement is Article 2262 of the Code Napoleon, now Article 3548 of our Civil Code, which deals with the liberative prescription of thirty years. Article 3499 of the Civil Code, with which we are here concerned, dealing with acquisitive prescription of thirty years, has no counterpart in the Code Napoleon.

possession to change or increase his adverse interest or possession from an undivided ½th to an exclusive possession of the whole. See Stutson v. McGee, 241 La. 646, 130 So.2d 403 and the many authorities there cited.

Thus, plaintiff's adverse possession has never exceeded the undivided ½th interest in the right of possession he inherited from his father and, by tacking his father's possession to his own, he would be entitled at the most to be recognized as having acquired by the 30-year prescription an undivided ½th interest in the land in contest, if, and only if, one coowner-possessor may maintain an action of this sort without the joinder of the other coowners as parties plaintiff.

Whether or not this can be countenanced, I am not at all certain. However, the law is well established that a coowner in possession is a precarious possessor, as defined by Article 3490 of the Civil Code, and that one possessing in such quality cannot prescribe against his coowner. Liles v. Pitts, 145 La. 650, 82 So. 755; Hill v. Dees, 188 La. 708, 178 So. 250 and the cases there cited.

Indeed, it was held in Satcher v. Radesich, 153 La. 468, 96 So. 35, that the possession of a vendor, which was not *exclusively* as owner, but for his co-heirs, could not be added to the possession of his vendees to establish prescription. Whether the reverse of that situation, which appears in this case, would be governed by the same rule I am not prepared to say at this time. However, one conclusion is perfectly evident and that is that plaintiff cannot tack his mother's and brothers' and sisters' possession to his own so as to entitle him to a complete prescriptive title to the land in contest.

It is to be observed that the majority opinion, in an apparent effort to take this matter out of the well-settled jurisprudence of the many cases involving tacking of possession, to which we strictly adhered in Stutson v. McGee, has construed the deeds herein under which plaintiff acquired the interests of his mother and his brothers and sisters as transferring to him a *title* to the 38 acres in contest as well as the acreage comprising McManor Plantation which is particularly described in the deeds. It is said that this is true because the deeds declare that the property conveyed is generally described as "A certain sugar plantation known as McManor Plantation * * *" which necessarily included all acreage possessed by the donor and vendors even though they had no *title* to part of the acreage.

In concluding thus the majority has completely overlooked the legal effect of the fact that the deeds contain a particular description of the lands conveyed which de-

scription omits the property in dispute. The jurisprudence relative to the construction of such deeds is likewise well established. It is, of course, the general rule that the particular description must prevail over the general description when there is a conflict between them.[2] See Snelling v. Adair, 196 La. 624, 199 So. 782 and the many authorities there cited.

But, even if there is good reason to suppose that the donor and vendors in this case were attempting to transfer their possession of the 38 acres to plaintiff, this does not suffice. For, under Civil Code Articles 3493 and 3494, a *title* to the land must be transferred, in order for the vendee to tack the possession of his vendor to his own. If this is not so, then all the jurisprudence laid down in the past is meaningless. In one of the landmark cases on the subject, Sibley v. Pierson, 125 La. 478, 51 So. 502, the court put it thus in the syllabus it wrote:

"Where one possesses beyond his title, but sells according to his title, the vendee cannot, for the purposes of the prescription of 30 years, acquirendi causa, tack to his own possession that of his

vendor of the property which is not included in the deed by which he acquires; there being no privity between him and his vendor with respect to such possession." [3]

That is exactly this case. In my opinion, it is incorrect in law and in fact to conclude that the deeds herein evidence the conveyance of any sort of *title* by the vendors to the 38 acres, which are not included in the description. The law is well settled that a deed which does not include a particular description of the disputed property does not translate a *title* to such property which will serve as a basis for a plea of acquisitive prescription of ten years by adverse possession. Bendernagel v. Foret, 145 La. 115, 81 So. 869; Hunter v. Forrest, 195 La. 973, 197 So. 649; Pierce v. Hunter, 202 La. 900, 13 So.2d 259 and cases there cited.

The same rule applies as to tacking under Civil Code Articles 3493 and 3494. There must be a *title* translative of the property in order for the purchaser to tack the possession of his vendor.

2. There is actually no conflict between the general description and the particular description in this case because the 38 acres were never a part of McManor Plantation until plaintiff's father first purchased the plantation in 1914 and exercised acts of possession over the 38 acres not included in his deed. However, the decision herein provides unquestion-

ably a conflict between the general and particular description and, therefore, the result reached is opposed to the general rule that, in case of conflict between a general and particular description, the latter must prevail.

3. See also comment "Tacking of possession for acquisitive prescription" by Herschel N. Knight, 8 La.L.Rev. 105, 107.

I respectfully dissent.

SANDERS, Justice (dissenting).

At issue here is the ownership of a 38-acre tract of land in Ascension Parish. The defendant is the record owner. However, the majority opinion has sustained the prescriptive title of the plaintiff-relator under Article 3499 of the Louisiana Civil Code, LSA, by permitting him to add to his own possession that of his mother, brothers, and sisters so as to cumulate the required 30 years adverse possession.

It is well settled that in order to tack, or add, possessions for the 30-year acquisitive prescription there must be a juridical link between the possessors as to the particular property. A purchaser may avail himself of the possession of his vendor only if he received a title to the property from the vendor. Arts. 3493, 3494, LSA–Civil Code; Stutson v. McGee, 241 La. 646, 130 So.2d 403; Sibley v. Pierson, 125 La. 478, 51 So. 502.

As a basis for its decision under the foregoing rule, the majority makes the following finding concerning the conveyances to plaintiff-relator from his mother, brothers, and sisters:

"While the property which forms the subject matter of this suit is not specifically described in any of the transactions hereinabove recited, nevertheless, the property which was intended to be transferred and which was actually transferred and delivered is described as 'A certain sugar plantation known as McManor Plantation, situated in the Parish of Ascension, State of Louisiana * * *', which in fact included the property in controversy. We note that each transfer not only conveys all the rights, ways, servitudes and privileges, but also conveys the advantages and appurtenances belonging to McManor Plantation."

I can not agree to this finding. The parties to this proceeding concede that the plaintiff-relator "at no time acquired by written instrument, nor did he or any heir ever transfer by written instrument, *any part or interest* in the property which is the subject of this suit, viz., the 38.88 acres." [1] (Italics mine) However, irrespective of the concession, the instruments of conveyance reflect that the 38-acre tract was not included in the transfers. In these instruments, the parties transfer McManor Plantation as described in detail, according to section, township, range, and acreage. No land in Section 6, where the property in dispute is located, is described or conveyed.

However, to support its finding that the conveyances included the transferor's in-

---

1. Original Brief of Plaintiff-Relator pp. 9–10.

terest in the disputed property, the majority points to the following language, which follows the detailed description:

"Together with all the rights, ways, servitudes, privileges and advantages belonging to said plantation and all of the buildings and improvements thereon and belonging and appurtenances thereof."

Clearly, this language has reference to predial servitudes, which are owed to one estate by another. See Arts. 646–659, LSA–Civil Code. It does not, and cannot, convey the additional tract of land. Moreover, neither the ownership, nor a claim to the ownership, of the 38-acre tract can be considered a servitude, privilege or advantage *belonging to said plantation*.

Inasmuch as there is no juridical link between plaintiff-relator and his mother, brothers, and sisters as to the property in controversy, he cannot utilize their possession for purposes of acquisitive prescription.

I, of course, assume at this time that the plaintiff succeeded to his father's possession to the extent of an undivided 1/12th interest and that his prescriptive title to this interest has been shown.

For the foregoing reasons, I respectfully dissent.