YARRUT, Judge.
This suit involves title to a square of ground in St. Bernard Parish, described as:
“Square No. 102 hounded by Goodchil-dren Street, Delille Street, Morales Street, and the West Line of Versailles Subdivision, and Measures 182 feet, 10 inches, and 5 lines on Goodchildren Street; 191 feet, 1 inch, 7 lines on Morales Street, 235 feet on Delille Street, and 235 feet, 1 inch, and 6 lines on the West Line of Versailles Subdivision.”
This contest originated with a possessory action where Plaintiffs alleged they, as heirs of Jean Baptiste Lauga, had been in possession of the immovable described for more than one year prior to suit, and that there was recorded in St. Bernard Parish, in 1964, a judgment recognizing Defendants as heirs of Dominique Pestalozza and, as such, owners of Square 102. Plaintiffs contend the recordation of the judgment putting the Pestalozza heirs in possession was a disturbance of their title, citing LSA-C.C.P. art. 3659 which provides, inter alia:
“A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right.”
The court held Plaintiffs were in possession for the requisite one year, sufficient to entitle them to a possessory action and ordered Defendants within 60 days to institute a petitory action.
Defendants then filed a petitory action in which Giovanni Pestalozza of Rome, Italy, appeared through his own counsel; and the other Defendants, residing in Italy, through a curator-ad-hoc appointed by the court. Giovanni Pestalozza claimed he was the sole owner of the property as the last of the surviving heirs of his ancestor, Dominique Pestalozza; and his co-Plaintiffs in reconventi’on, through their curator-ad-hoc claim joint ownership with Giovanni Pésta-lozza, as heirs of Dominique Pestalozza.
Whether one or all of the Plaintiffs in reconvention are the heirs of Dominique Pestalozza is of no moment, if Defendants in reconvention (Plaintiffs in the possessor action) can establish their ownership of the property by continuous, uninterrupted possession as owners for 30 years as they alleged in defense of the Pestalozzas’ claim of ownership as heirs of Dominique Pesta-lozza.
Plaintiffs in reconvention will be referred to as the “Pestalozza heirs” and Defendants in reconvention as the “Lauga heirs.”
The district judge recognized the Lauga heirs as the owners of the property, by virtue of having proved by competent evidence that they possessed the same as .owners for over 30 years, peacefully, openly, continuously, and without objection.
One who, as owner, possesses real estate continuously and uninterrupted for a period of 30 years, acquires a title good against the world.
“The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith.” LSA-C.C. art. 3499.
“The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.” LSA-C.C. art. 3500.
“The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular, a lucrative or an onerous title.” LSA-C.C. art. 3493.
*616 “By the word author in the preceding article, is understood the person from whom another derives his right, whether by a universal title, as by succession, or by particular title, as by sale, by donation, or any other title, onerous or gratuitous.
; “Thus, in every species of prescription, the possession of the heir may be joined to that of the ancestor, and the possession of the buyer to that of the seller.” LSA-C.C. art. 3494.
The “Pestalozza heirs,” through their respective attorneys, have taken this appeal, each claiming his respective client or clients should be declared the owner of the immovable, and praying for a reversal of the judgment in favor of the Lauga heirs.
Evidence establishing actual possession of the property by Jean Baptiste Lauga, ancestor of the Laugas, from the late 1890’s is as follows:
Judge Richard Riess (age 81) testified that at one time he owned Square 99 in the immediate vicinity of Square 1.02; that he remembers Jean Baptiste Lauga as the first owner and Louis Lauga the owner from approximately 1900 until the time of his death in 1947; that Louis Lauga and his ancestor in title both possessed as owners and. farmed the land; that their possession as dwners was public knowledge and he never heard of any adverse claim of ownership.
Lucien Mistrot (age 77) testified that ever since childhood (approximately 1898) he had observed the Laugas farming the land and that it was fenced. He had never héard of anyone other than the said Jean Baptiste Lauga and his heirs claim ownership of the property.
Gustave Riess (age 80) substantiated the prior witnesses and pointed out that he has lived all his life just a few squares from Square 102.
Henry Korne, Sr. (age 62) testified he could remember the late Louis Lauga, fa-. ther of the present Plaintiffs, possessing the property as owner as early as 1910; that the property was fenced, and that it was public knowledge that Louis Lauga and the present Plaintiffs were the owners of the said square of ground.
Frank Lauga testified his father, Louis Lauga, possessed as owner and farmed same up until his death in 1947; that he farmed with his father until the latter’s death and for a year thereafter; that he and his co-heirs had the streets cut through in 1948, and that he had paid to have “fill” put on the said square as late as 1963; that he had possessed with his brothers and sisters, as owners, Square No. 102 up to the present time.
Felix Salande, a former road-grade operator for the St. Bernard Parish Police Jury, testified he cut the streets around Square 102 about 1947 or 1948; that at the time it was necessary to knock down the fences to cut the streets, and that the square had been under cultivation at that time. He further testified that in later years he cut the grass when requested by the Laugas.
Mrs. Marie L. Dupuy, Chief Deputy Assessor for St. Bernard Parish, identified the 1964 assessment rolls indicating the subject property was assessed to the Plaintiffs herein and that she had been on the Assessor’s staff for ten years and there had been no change in the assessment since that time.
Louis J. Lauga, Deputy Civil Sheriff and one of the Plaintiffs herein, testified that old assessment records were stored in the vault in the Sheriff’s office and that, as far back as 1918, Square 102 had been shown on the assessment rolls in the name of J. • B. Lauga, or his heirs in title; and that he and his brothers and sisters, as heirs of their father, the late Louis Lauga, had paid the real estate taxes since 1947, the year of their father’s death, to the present time, which paid tax bills were introduced in evidence.
*617 The district judge has so clearly stated the issues, the facts, and the applicable law so well, that we adopt them as our own, to-wit:
“In addition to farming, fencing the land, paying taxes, and exercising other acts of ownership, the plaintiffs, Louis J. Lauga et al, in recent years have had portions of said square zoned commercial by appropriate action of the Parish Police Jury, continually cut the grass, secured permission from the Police Jury to resubdivide the square, had the property surveyed, etc.
“The Court has carefully considered the testimony presented at the trial of this case and has come to the conclusion that there is ample evidence to show that Jean Baptiste Lauga, then his son, Louis Lauga, and thereafter, the present Lauga plaintiffs have continuously possessed the square of ground, which is the subject of this suit, for a period in excess of sixty years, commencing in the year 1896, and that such possession is sufficient to vest title in the plaintiffs by virtue of a thirty year prescriptive title. LSA-C. C.P. Article 3500 provides that the prescription of thirty years is founded on continuous and uninterrupted possession which must be public and unequivocal, and under title of owner. Certainly in view of the civil law doctrine of ‘le mort saisit le vif’ there was a succession of relationship between the possession of the late Jean Baptiste Lauga, his son, the late Louis Lauga, by operation of law and existing in fact. As the Court understands this civil law doctrine, the heirS succeed to all of the rights of the decedent at the very moment of death, and without the passage of the slightest moment of time. There was certainly never any intention bn the part of the present Lauga litigants or théir predecessors to abandon either their possession or claim of ownership with regard to the Square which is the subject of this suit, nor did any abandonment occur in fact.
“Actually, when Jean Baptiste Lauga died around 1918, he had possessed this land by farming operations for twenty-three (23) years. After his death, his son, Louis Lauga, farmed this land continuously until his death in 1947. Therefore, the requisite thirty years possession was actually completed in the year 1926.
“When Jean Baptiste Lauga died in 1918, his children were his legal heirs, being called to his succession by operation of law, LSA-C.C. Articles 940 and 941. Under the laiy and jurisprudence, the Court concludes that ‘privity’ existed between Jean Baptiste Lauga, his son Louis Lauga, and the present Lauga plaintiffs with respect to the possession of the disputed property, and they are entitled to join their possession to that of their ancestor. See LSA-C.C. Articles 3493, 3494. Noel v. Jumonville Pipe and Machinery Co., Inc., 245 La. 324, 158 So.2d 179.
“The evidence preponderates that" the possession was in the capacity of ownership in the Laugas. A. M. Edwards Co. v. Dunnington, La.App., 58 So.2d 225; Cortinas v. Peters, 224 La. 9, 68 So.2d 739; Esso Standard Oil Co. v. Catsulis, La.App., 136 So.2d 431, Noel v. Jumonville Pipe and Machinery Co., supra, and ‘the ownership of immova-bles is prescribed for by thirty years without any need of title. * * * ’ LSA-C.C. Article 3499. In addition, it is well established that the nature, of the land or use to which, it may be devoted governs the possession necessary to support prescription. King v. Bd. of Commissioners for Atchafalaya Basin Levee Dist., App. 1962, 148 So. 2d 138, writ refused 224 La. 118, 150 So.2d 585. With respect to the property in question, the evidence reveals that it was farmied from approximately 1896 until 1948 ’and, since‘'that time; *618 the plaintiffs have exercised other acts of possession over said land.
“The defendant Pestalozza heirs have not introduced one iota of evidence that they ever exercised any possession whatsoever over the land in controversy, nor is there a scintilla of evidence of their asserting any cláim of ownership over the subject land in the 109 years since the rendering of the Judgment of Possession in the Succession of Dominique Pestalozza.
“The only scintilla of evidence 'attempted to be offered by the defendants, Camille Pestalozza et al, to show an interruption of possession, was the testimony of one Sam Randazzo, who alleges that a pigeon coop was erected about ten years ago by his son-in-law, and that he cut a portion of the grass to improve the appearance of his adjoining property. The evidence reveals that neither Randazzo or his son-in-law was attempting to possess as owners.”
The judgment of the District Court decreeing the Lauga heirs owners of Square 102 is affirmed, and the Pestalozza heirs condemned to pay all costs in both courts.
Judgment affirmed.