WATSON, Judge.
Plaintiff filed this petitory action alleging the ownership of certain immovable property constituting part of Rexmere Plantation in Avoyelles Parish. Mrs. Eleanor Marshall, born Blakewood, was made defendant, plaintiff alleging that she was in possession of the property without title and refused to deliver possession to plaintiff. Defendant answered plaintiff’s petition and admitted possession but claimed ownership of the property by virtue of 30 years possession as owner. The property in question is a 10-acre tract *338 which formed part of the L. R. & N. Railroad right-of-way until the railroad abandoned it in 1927.
The trial court granted judgment to plaintiff recognizing plaintiff as owner of the following described property :
“A certain tract or parcel of land containing 10 acres, more or less, situated in the Southeast Quarter of Section 1, Township 1 North, Range 6 East, bounded by the Northeast by the North right of way line of the Louisiana Railway & Navigation Company (now abandoned), East and South by lands of Hilcliffe Farms, Inc. and West by lands now or formerly owned by T. E. Ponthieux.” (TR. 23)
Defendant has appealed from the adverse judgment of the trial court, alleging that the trial court erred in not finding that defendant acquired the property in dispute by 30 years adverse possession.
The testimony was as follows:
Mrs. Eleanor Blakewood Marshall testified that she was born September 16, 1903, on Kleinwood Plantation in Avoyelles Parish. Her grandfather, Dr. B. W. Blake-wood, bought the upper half of the Bank place comprising 242 acres in the 1800’s. This property was partitioned among his six heirs. Among these six was Mrs. Marshall’s father, E. G. Blakewood. Defendant’s father also acquired a 16.71 acre tract in 1923 from Emile Regard, which was traversed by the L. R. & N. Railroad right-of-way running in an east-west direction. This right-of-way was abandoned in August of 1927 when a bridge was constructed across the Atchafalaya River at Simmesport. After abandonment Mr. Blakewood fenced in the railroad right-of-way and used it as part of his pasture. Mrs. Marshall testified that she recalls these fences being in existence since 1928. They have been continually maintained in the same places to the present time. Her father hauled sand and gravel from this area in 1933 and 1939 and sold timber from it. When defendant’s father died in 1950, she acquired by partition the 16.71 acre tract which abuts the 10 acres in dispute. She has continued to use it for pasture, cleared the area along the fences in 1969, has seeded the area with rye'for winter grazing, and has sold timber from the property. Mrs. Marshall testified that when she inherited the adjoining 16.71 acres she felt she also inherited all of the land enclosed by the fences. In connection with her testimony she introduced in evidence an old map from her father’s records showing all of the property owned by her father, including the disputed 10 acres colored in light green. (D-l, TR. 73).
Mr. Otis Reason, an employee of Hil-cliffe Farms for 10 years, testified that he was familiar with the clearing operation done by Mrs. Marshall in 1969; that it took place only on the north side of the old railroad; and that none of the property on the south side, which is the location of the 10 acres in dispute, was cleared.
Mrs. Marshall testified on re-direct that the clearing took place on the south side as well as the north side of the old railroad track and that she physically assisted Dudley Dubroc who was hired to do the work on a bulldozer. This is the only point on which Mrs. Marshall’s testimony was questioned, and we do not believe the issue to be decisive.
Mrs. Marshall’s testimony that her father fenced the disputed land adjacent to his own south of the railroad track in 1928 was uncontradicted.
Defendant’s father, E. G. Blakewood, apparently possessed the disputed property as owner from 1928 when he enclosed it by fence until his death on August 25, 1950. His six heirs were placed in possession of his property by a succession judgment dated December 7, 1950. The property was partitioned on September 1, 1951, and defendant acquired the property adjacent to the disputed tract in the partition. Neither the succession judgment nor the partition included a description of the disputed tract.
The factual situation here is almost identical to that in Noel v. Jumonville Pipe *339 and Machinery Company, 245 La. 324, 158 So.2d 179 (1963). The trial court therefore erred in finding that:
“Following the death of Mr. Blakewood in 1950, a new and different possession necessarily started at that time.” (TR. 19)
In the Noel case, supra, the Louisiana Supreme Court held that one of eight heirs who acquired by partition the tract adjacent to a disputed tract continued his father’s possession of the disputed tract without interruption and acquired the disputed tract by 30 years acquisitive prescription.
The trial court’s position here is that stated in Justice McCaleb’s dissent in Noel, supra, and is not the law.
Since the property in the instant case has been enclosed by fence for over thirty years, defendant could also have acquired title under LSA-C.C. art. 852.[1] See 38 Tulane Law Review 575.
The trial court relied on a letter (TR. 72, P-7) from Roy C. Woods, owner and operator of Rexmerc Plantations to E. G. Blakewood, defendant’s father, dated August 14, 1940, to establish :
“that E. G. Blakewood acknowledged his possession of the disputed tract was not as owner; that he acknowledged it belonged to Roy C. Woods, who in turn acknowledged he possessed another tract for E. G. Blakewood, all as a convenience for their mutual benefits.” (TR. 19)
The letter in question reads as follows :
“My dear Mr. Blakewood:
“For your records I wish to advise you that T have, in accordance with your consent and understanding, continued my pasture fence on the southern boundary of my land in the Southwest quarter of the Northwest quarter and the Northwest quarter of the Southwest quarter of Section 10, T 1 North, Range 6 East, bounded north by Horse Shoe Lake, south by Purdy Hess, east by Rexmere and West by you; and I-have also continued the fence down Bayou Patasas to Patasas Lake. This fence runs in a westerly direction from the south boundary of our land through your land to Bayou Patasas and down Bayou Patasas to Lake Patasas.
“I understand that you are allowing me the use of this land for pasture purposes, and as full compensation for the use of this land I allow you to continue your fence across the railroad grade on the Banks place, and T will to the best of my ability preserve and protect your growing stumpage thereon until such time as you may need your land. I also agree that my use of this land will not interfere with any mineral lease you now or may hereafter have covering the land used by me.” (TR. 72)
It is difficult to see how a letter from Woods with nothing to establish that it was received, acknowledged or consented to by Mr. Blakewood could establish an intention on the part of Mr. Blakewood. We do not know if the fence referred to was the fence enclosing the 10-acre tract in question. The letter refers to a fence “on the Banks place”. The “Bank place” is described in the succession judgment as bordered on the South by the 16.71 acre tract acquired by E. G. Blakewood from Emile Regard. (TR. 46). Defendant testified that the upper half of the Bank *340 place comprising 242 acres was acquired by her grandfather in the 1800’s whereas her father acquired the 16.71 acre tract of land bordering the disputed 10 acres from Emile Regard in 1923. Even if we are to assume that the letter in fact refers to the disputed tract and that there was an agreement between Mr. Blakewood and Mr. Woods, the meaning of the letter is still somewhat ambiguous.
In regard to this letter, Mrs. Marshall testified that:
“I can’t tell by this second paragraph of the letter where Mr. Woods is talking about a fence. I don’t know if he’s talking about Section 3, if he’s talking about Section 1, if he’s talking about Section 6. There were possibilities of extending a fence in any of those sections.” (TR. 117)
We do not agree with the trial court that the letter in question shows that Mr. Blakewood’s possession of this property was other than as owner.
The trial court found a question of defendant prescribing against the other heirs of her father. Defendant, in the partition between heirs, acquired the property contiguous to this disputed tract and thus, according to the law in Noel, supra, continued her father’s possession of the adjoining property.
Although the trial court found it significant that the other heirs of E. G. Blake-wood did not join defendant in this proceeding, it was defendant who was cited as being in possession of the property by plaintiff. She admitted this fact. The other heirs’ properties are not contiguous to the disputed land, and their failure to intervene in the matter in no way weakens defendant’s claim.
We are convinced that defendant has acquired title to the disputed property by 30 years’ possession by her and her father, the trial court being in error as to its conclusions of law.
For the foregoing reasons, the judgment of the trial court in favor of plaintiff and against the defendant is reversed and it is ordered, adjudged and decreed that there be judgment herein in favor of defendant, Mrs. Eleanor B. Marshall, and against plaintiff, Hilcliffe Farms, Inc., recognizing defendant as the lawful owner and entitled to the full and undisturbed possession of the following described property :
“A certain tract or parcel of land containing ten (10) acres, more or less, situated in the Southeast Quarter of Section 1, Township 1 North, Range 6 East, bounded on the Northeast by the North right of way line of the Louisiana Railway & Navigation Company (now abandoned), East and South by lands of Hil-cliffe Farms, Inc. and West by lands now or formerly owned by T. E. Pon-thieux.”
All costs of trial and appeal are assessed to plaintiff-appellee, Hilcliffe Farms, Inc.
Reversed and rendered.

. LXA-('.r. .-ut. S52.
Art. <S52. Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other nets h.v which property may be transferred, if it be proved that the person whose title is of the latest date or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, lie will be permitted to retain it, and his neighbor, though he have a more, ancient title, will only have a right to the excess; for if one can not prescribe against his own title, lie can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.